**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION,<br>a Delaware Corporation,<br>5791 Van Allen Way<br>Carlsbad, CA 92008 <br><br>                Plaintiff, <br><br>v.<br><br>LIFE TECHNOLOGIES CORPORATION,<br>10135 Treble Court<br>Rockville, MD 20850<br>(Montgomery County), *et al.*,<br><br>               Defendant. | Civil Action No. 8:10-cv-03527-RWT |


**DR. KRISHNAMURTHY'S OPPOSITION AND OBJECTIONS TO PLAINTIFF'S**
**APPLICATION FOR FEES**

**TABLE OF CONTENTS**

I.     BACKGROUND …………………….………….……...…………………4.

II.    THE LEGAL FRAMEWORK FOR AWARDING
       ATTORNEYS EES IN CONTEMPT PROCEEDINGS ……………………..6.

III.   ARGUMENT  …………………………………………………………………7.

A. Dr. Krishnamurthy Did Not Willfully Disobey The Court's Order. …………….....7.

B.  The Fee Award Sought by Plaintiff is not Reasonable ……………………….…..8.

       *1.  Plaintiff's Application For Fees Lacks Reasonable Billing Judgment*…………*9.*

       *2.   The Amount of Fees Allegedly Expended by Plaintiff are not
       reasonable in view of the value of this case* …………………………………….…11.

       *3.  The Amount of Fees Allegedly Expended by Plaintiff on
        the single motion are not reasonable in view of the value and litigation fees of an
       average trademark case.* …………………………………………………………13.

       *4. The amount of fees and costs is unreasonable and exorbitant in view of the time
       spent and number of lawyers that were involved.*  …………………………………14.

IV CONCLUSION ……………………………………………………………………….17.

# TABLE OF AUTHORITIES

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.),
cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) ……………………………....9.

*Cohen & Thiros v. Keen Enterprises,* 44 B.R. 570,  (D.N.D.Ind.1984). …………………………...10.

*Dick's Sporting Goods v. Dick's Clothing & Sporting Goods*,
 12 F. Supp. 2d 499  (D. MD 1998) …………………………………………………………………12.

*Equal Employment Opportunity Commission v.*
 *Service News Company,* 898 F.2d 958 (4th Cir. 1990) ……………………………………………...,8.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)……………………...10.

*In re General Motors,* 61 F.3d 256 (D.MD 1995)……………………………………………………..7

*In re Great Sweats, Inc*., 113 BR 240, 243 (E.D. VA 1990). ……………………………………...9.

*In re Reed,* 95 B.R. 626, 628 (Bankr.E.D. Ark.1988) ………………………………………………9.

*In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987) ………………………………………9.

*Omega World Travel, Inc. v. Omega Travel, Inc.,*
 710 F.Supp. 169 (E.D.Va.1989), *aff'd,* 905 F.2d 1530, 1990 WL 74305 (4th Cir.1990). …………...7.

*Spell v. McDaniel,*852 F.2d 762 (4th Cir.1988) …………………………………………..………….10.

*Sun Publishing Co., Inc. v. Mecklenburg News, Inc.,*823 F.2d 818 (4th Cir.1987) ……...…..10, 14, 17.

*Synergistic Int'l, LLC v. Korman,* 470 F.3d 162 (4th Cir. 2006). …………………………………12.

Interested party, Dr. Krishnamurthy, through counsel, serving as trustee of the assets of

Defendant Life Technologies Corporation, files this opposition to Plaintiff's Motion or Application

for fees.   Dr. Krishnamurthy did not willfully disobey the court's order and the amount of funds that

Plaintiff allegedly spent by Plaintiff's in connection with preparing and filing its motion to show

cause to have Dr. Krishnamurthy held in contempt are excessive, exorbitant and bear absolutely no

relation any trademark damages that could Plaintiff could rationally claim.


I.        **FACTUAL BACKGROUND**

1.        This is a trademark infringement case.  Defendant was organized in August 2002

with the intent to sell medical and biological equipment and services.  The company was

formally dissolved in March of 2012 and a default judgment was entered in March 2012 in this

matter.  Declaration Dr. Krishnamurthy in Support of Opposition to Plaintiff's Request for Fees.

¶ 2. ("Krishnamurthy Dec")

2.        Plaintiff purportedly is seeking discovery to base its alleged damages claim

arising from the trademark infringement holding in the default judgment.

3.        Dr. Krishnamurthy filed for a number of trademark applications on behalf of the

Defendant Company wherein he erroneously represented that he had made sales in commerce in

the U.S.  Krishnamurthy Dec ¶ 4.

4.        Dr. Krishnamurthy also assisted with secured a number of domain names for an

Indian Partnership, a partnership that is not defendant in the present action.  Krishnamurthy Dec

¶ 5.

5.      He ran the Defendant Company out of his residence and he and his wife were the only officers and employees.  Dr. Krishnamurthy maintains full time employment with others during the life of the operation of the company.  Krishnamurthy Dec ¶ 6

6.      Tax returns that were produced in the litigation show reported income of less than $30,000.00 over the life of the company.  And this income was realized in 2008 and related to some internet information technology related consulting services – services totally unrelated to the trademark at issue.   The company was essentially a shell for most years of its existence and it should not have come as a surprise the company maintained only a few records from its ephemeral existence.  Krishnamurthy Dec ¶ 7.

7.      Dr. Krishnamurthy used a number of email accounts over the years but did not save these records as there was no business reason to store old communications that may have related to the operation of the defunct business.  Moreover, the computer that he has used for the business crashed and was discarded.  Krishnamurthy Dec ¶ 8.

8.      Dr. Krishnamurthy has represented to the court that he does not have possession or control of emails of various historical accounts held that were or may have been held by various internet service providers. Krishnamurthy Dec ¶ 9.  Plaintiff has been understandably frustrated by the lack of documents produced by defendant in discovery and absence of emails.

9.  In an order dated January 9, 2014 the Magistrate ordered that Dr. Krishnamurthy provide his consent to certain ISPs to release certain emails.  Krishnamurthy Dec ¶ 11.

10.  Dr. Krishnamurthy filed objections to the January 9, 2014 order on January 21, 2014 and sought a motion for protective order.  Dr. Krishnamurthy's objections addressed the scope of the production provided by the order which he argued was overly broad.  Krishnamurthy Dec ¶12.

5

11. On January 21, 2014 – after Dr. Krishnamurthy's objections were filed -- Life Technologies provided to counsel for Dr. Krishnamurthy its proposed "consent forms" and demanded that Dr. Krishnamurthy sign the releases. **Krishnamurthy Dec ¶ 13.**

12. Life Tech demands that Dr. Krishnamurthy execute the consent forms that it had drafted and provided to Krishnamurthy. These consent forms had never been reviewed or approved by the Court.

13. Dr. Krishnamurthy made certain objections to the consent forms provided by Life Technologies, in summary:

- Dr. Krishnamurthy objected to affirmatively representing that he had authority to release all of the emails from certain accounts, namely those associated with a partnership in India that had removed him in 2011, and therefore he had no authority, either actual or apparent, to authorize the release.
- Dr. Krishnamurthy objected to affirmatively representing that he had authority to release all of the emails from accounts associated with his past residences in view of the unrestricted time frame. It is submitted that the requested authorization would encompass emails from current residents of these addresses, or former residents of the addresses now associated with Dr. Krishnamurthy that have no connection with Dr. Krishnamurthy whatsoever.
- Dr. Krishnamurthy objected that he indemnity the ISPs from any liability from improperly releasing emails, especially in view of the issues identified above. **Krishnamurthy Dec ¶ 15**

14. Dr. Krishnamurthy prepared and signed alternative consent forms for the ISPs that *inter alia* removed certain email accounts and the indemnification language and provided the forms to Life Technologies. **Krishnamurthy Dec ¶ 16.**

15. Dr. Krishnamurthy, through counsel, also indicated that he willing to try to negotiate consent forms that did not include the objectionable language identified above and sought mediation from the Magistrate assigned to the case. **Krishnamurthy Dec ¶ 17.**

16. On April 9, 2015, Life Tech filed a Motion to Show Cause why Dr. Krishnamurthy Should not be held in for contempt for refusing to execute its version of the consent forms.

17.   Krishnamurthy replied to the Motion to Show cause on April 9 and on a hearing was held on May 16, 2014.

18   The Magistrate's issued its order on August 22, 2014 that recommended that Dr. Krishnamurthy be held in contempt.  Defendant filed objections on September 8, 2014.

19.  The Court adopted the Magistrates in an order dated September 10, 2014.

20.  In view of the threat of imprisonment, Dr. Krishnamurthy executed Plaintiff's "consent forms."

## II.   THE LEGAL FRAMEWORK FOR AWARDING ATTORNEYS FEES IN CONTEMPT PROCEEDINGS

If contempt is found as is here, the remedy is within the trial court's broad discretion:

Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorneys fees. *United States v. Trudell,* 563 F.2d 889, 891 (8th Cir.1977). However, the remedies and sanctions must be remedial and compensatory and, unlike criminal contempt, nonpunitive. *[United States v.] United Mine Workers [of America],* 330 U.S. [258] at 302-04, 67 S.Ct. 677, 91 L.Ed. 884 [(1947)].

*In re General Motors,* 61 F.3d 256, 259 (1995).  Before awarding attorney's fees, however, a finding of "willful disobedience" may be required. *Omega World Travel, Inc. v. Omega Travel, Inc.,* 710 F.Supp. 169, 172-73 (E.D.Va.1989), *aff'd,* 905 F.2d 1530, 1990 WL 74305 (4th Cir.1990).

## III.     ARGUMENT

### A.   Dr. Krishnamurthy Did Not Willfully Disobey The Court's Order.

It is submitted that holding of "willful disobedience" is not warranted in these circumstances.  The Court has now found Dr. Krishnamurthy's in contempt for failing to execute consent forms, prepared by the adverse party, that were never actually approved or

even seen by the Court.  Moreover, Dr. Krishnamurthy was never provided a manner in which to object. The following factors militate against a finding of willfulness:

- Krishnamurthy was never provided an opportunity to have his objections to the consent forms heard.   While Dr. Krishnamurthy attempted to seek guidance from the magistrate to address his legitimate concerns, he was never given a forum outside the contempt proceedings in which to object and voice his concerns.

- Dr. Krishnamurthy attempted to resolve the dispute before Plaintiff' initiated the contempt proceedings.  Dr. Krishnamurthy, through counsel, sought guidance and clarification from the magistrate but was not able to successfully schedule a hearing before Plaintiff brought its motion for contempt.

- Dr. Krishnamurthy provided alternative consent forms in a good faith effort to provide the internet service providers (ISPs) authority to disclose emails from those accounts that he controlled.

- The issues raised by Dr. Krishnamurthy in the contempt proceeding, including Dr. Krishnamurthy's due process rights and first Amendment, remain valid and legitimate.  Moreover, there is scarce authority that addresses a court's power to compel a litigant to sign papers such as those at issue in the present circumstances – papers in which a litigant regards as akin to a false oath.  The consequences of the present action may serve to materially prejudice Dr. Krishnamurthy.   For example, in view of the Court's contempt order, the Plaintiff Lifetech has now manufactured a signed admission from Dr. Krishnamurthy that states that he has the authority to act on behalf of various unrelated third parties.

In view of the foregoing, the court should find that Dr. Krishamurthy's refusal to sign the consent order did not constitute willful disobedience of the court's order.

### B.  The Fee Award Sought by Lifetech is not Reasonable

Even if the court were to award fees to Plaintiff, the fees sought are not even close to being reasonable.   The Fourth Circuit addressed the issue of attorneys' fees in *Equal Employment Opportunity Commission v. Service News Company,* 898 F.2d 958 (4th Cir. 1990) (*"EEOC"*), and remanded the case to a district court for an application of the *Barber* 12-factor test. The Fourth Circuit's approach in *EEOC* has been characterized as a hybrid of the lodestar and 12-factor tests.  In *EEOC,* the Fourth Circuit held that the factors enumerated in *Barber* should be considered in determining the reasonable rate and the reasonable number of hours. *EEOC,* at 965 (*citing Daly v. Hill,* 790 F.2d 1071 (4th Cir.1986); *Blum,*465 U.S. at 888, 104 S.Ct. at 1543)).   The court in  *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir.), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) listed the following factors: *Barber* factors are as follows:

 (1) the time and labor expended;

 (2) the novelty and difficulty of the questions raised;

 (3) the skill required to properly perform the legal services rendered;

 (4) the attorney's opportunity costs in pressing the instant litigation;

 (5) the customary fee for like work;

 (6) the attorney's expectations at the outset of the litigation;

 (7) the time limitations imposed by the client or circumstances;

 (8) the amount in controversy and the results obtained;

 (9) the experience, reputation and ability of the attorney;

9

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

Courts have further recognized that "the burden of proof" as to the reasonableness of requested compensation is on the applicant" *In re Great Sweats, Inc*., 113 BR 240, 243 (E.D. VA 1990). See also *In re Reed,* 95 B.R. 626, 628 (Bankr.E.D. Ark.1988); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987). Even in the absence of an objection, the Court have found an independent duty to investigate the reasonableness of compensation. *In re Great Sweats, Inc*., Supra., *See also Reed,* 95 B.R. at 628; *Pettibone,*74 B.R. at 299-300.

### *1  Plaintiff's Application For Fees Lacks Reasonable Billing Judgment.*

In calculating the lodestar, the Court should examine the time and labor required in a case, the results obtained and awards in similar cases. *Barber,* 577 F.2d at 226. The Court is not required to adopt the number of hours submitted by an attorney in his fee application, but may make an independent determination of the reasonableness of hours devoted to the case.  *Equal Employment Opportunity Commission v. Service News Company*, 898 F.2d 958 at 965 (4th Cir. 1990)   at 965; *Spell v. McDaniel,* 852 F.2d 762, 767-71 (4th Cir.1988).  In this regard, the Court alone acts as a "disinterested arbiter." *Cohen & Thiros v. Keen Enterprises,* 44 B.R. 570, 573 (D.N.D.Ind.1984).

According to the D.C. Court of Appeals, "it does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980).  With regard to billing judgment, language from the D.C. Court of Appeals which had been quoted in  *Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983.:*

> [attorneys] should make a good faith effort to exclude from a fee
> request hours that are ***excessive, redundant or otherwise***
> ***unnecessary.***

*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939-40 emphasis added (*quoting Copeland,* 641 F.2d at

891).   The Fourth Circuit decision in *Sun Publishing Co., Inc. v. Mecklenburg News, Inc.,* 823

F.2d 818 (4th Cir.1987),  supports the proposition that exorbitant fee requests out of proportion

to the underlying harm should be denied *in toto.*   In *Sun Publishing,* the underlying harm was

approximately $85,000. *Id.* at 819. The trial court denied a second supplemental application for

fees without addressing *Barber,* based on the fact that the second request shocked the conscience

of the court. The Fourth Circuit reviewed and affirmed this decision, noting that "as many as six

lawyers from three different firms billed significant amounts of time in preparing for the short

hearing on a simple issue." *Id.* at 820. Thus, the Fourth Circuit examined the reasonableness of

the request based on the totality of the circumstances, and relied on the simplicity of the issue

primarily in determining that the second fee request was disproportionate  *See also  In re Great*

*Sweats, Inc*., 113 BR 240, 243 (E.D. VA 1990).   (When a cursory cost benefit analysis shows

that litigation is more expensive that it is worth, bankruptcy courts will reject fee awards.)

Here, the fees expended by Plaintiffs were excessive, entirely asymmetric with the issue

in dispute, the amount in controversy, and the time and labor expended was not required to reach

the result.  Finally, the issues as ***characterized by the Plaintiff' own arguments*** were not

particularly sophisticated.


### 2.  *The Amount of Fees Allegedly Expended by Plaintiff are not reasonable in view of the value of this case.*

Under any theory of damages, the value of this case is highly relevant.  It is undisputed

that Defendant made no profits and its total reported revenue was less than $30,000.00 over its

ten- year life-span – which averages less than about $3,000.00 per year.  This revenue was earned from internet information technology consulting services and is unrelated to the various goods and services identified in the Defendant's doomed trademark portfolio.  While there remains a split among the circuits whether proof of actual confusion is required to prove damages, the Fourth Circuit has identified six nonexclusive factors that should be considered when awarding damages or a defendant's profits:

> (1) whether the defendant had the intent to confuse or  deceive, (2) whether sales have been diverted, (3) the  adequacy of other remedies, (4) any unreasonable delay  by the plaintiff in asserting his rights, (5) the  public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 175 (4th Cir. 2006).  In the Fourth Circuit a prevailing party is not required to make a showing on any one factor or even a majority of the factors, *see id*. at 175-76, and different or additional factors may be considered if the circumstances require, *id.* at 176.  But there must be some proof and some evidence of damages to support a claim**.**  Here there is absolutely no evidence of any compensatory damages.  *See Dick's Sporting Goods v. Dick's Clothing & Sporting Goods,* 12 F. Supp. 2d 499  (D. MD 1998) (Finding award of monetary damages not warranted in this case because claims not allege facts to support an award of compensatory damages and during course of litigation there was no claim of profits from improper use of an infringing trade name, or that conduct caused any monetary losses other than the litigation costs themselves.)

　　Applying the framework set forth in *Synergistic, supra to* the present case, (1) There is no evidence that Defendant had an intent to confuse or deceive.  The evidence shows that it sought counsel from a trademark lawyer to register its trademarks with the USPTO.  These actions were completely open and notorious.  (2)  Plaintiff Life Technologies has not demonstrated that a single sale has been diverted. The parties do not even directly compete with most of the products

that were listed in Defendants trademark applications.  On information and belief, Plaintiff is

Fortune 1000 company and does not "compete" with home-base companies that operate only

part time.  In any event, notwithstanding years of discovery, Plaintiff has not identified a single

purchase order, a single customer or a single product in the market that it competes with.  (3) In

connection with the adequacy of other remedies, Defendant has been permanently enjoined from

use of the trademarks and the company has been dissolved.  (4) In connection with

"unreasonable delay" of enforcement, this factor is neutral.  (5) The public interest in making

misconduct unprofitable has been adequately served here.  Dr. Krishnamurthy has continued to

lose time and money on this litigation that he had attempted to dissolve years ago. There is a

strong public interest in allowing an unprofitable business to end and not span endless litigation.

(6) There is absolutely no evidence that defendant made any competing sales or of palming off

any products or services.

It is respectfully submitted that the Plaintiff has not been damaged.  And it is noteworthy

that Plaintiff is not seeking information regarding alleged damages in the discovery now sought.

Had it wanted to learn about alleged competing products, it could have sought third party disco

very from the FDA which would have had to approve most of the various products listed in the

trademark applications. Plaintiff could have sought information from customs regarding alleged

imports of products.  Plaintiff has access to years of phone records but has not located any

alleged customers for the Defendants products.  There are no products and Plaintiff is fully aware

of this

In summary, the Plaintiff can point to ***no actual damages and can't point to any profits***

***made by Defendants***.  Rather, on information and belief, it is attempting to use this litigation and

discovery as a fishing expedition to try to obtain leverage in unrelated legal proceedings that may

13

exist in India based upon Dr. Krishnamurthy's former association with a partnership organized and operated in India.

The amount spent on this single motion and which it now seeks reimbursement is entirely unreasonable in view of the value of this particular case.

### 3. *The Amount of Fees Allegedly Expended by Plaintiff on the single motion are not reasonable in view of the value and litigation fees of an average trademark case.*

In addition, the amount sought by Plaintiff is also devoid of reason in view of the *average* trademark cases where considerably more was at stake.  For example, the 2013 AIPLA Economic Survey that includes a study of the median costs of trademark cases litigated throughout the U.S.  In cases that have an amount in dispute up to $1,000,000.00 the *average* amount of litigating the entire case through the discovery phase is $150,000.00. *See* Exhibit 1. This average amount of fees expended would encompass multiple depositions, document production, interrogatories, requests for production, protective orders, client communication, and presumably experts and surveys.  In *Sun Publishing* case an awarded of $300,000.00 was approved that reflected the costs for the *entire antitrust case through trial*. See *Sun Pub. Co., Inc. v. Mecklenburg News, Inc*., 823 F. 2d 818 (4th Circuit 1987).

Yet Plaintiff deems its costs and fees of $ 152,096.26 are reasonable in connection with preparing and arguing *a single motion - -* a motion by its own characterization involved a simple and clear case of a violation of a discovery order.

### 4. *The amount of fees and costs is unreasonable and exorbitant in view of the time spent and number of lawyers that were involved.*

Plaintiff's lead counsel Mr. Jeagers apparently maintains his office in California and is a member of the bars of Kentucky and Texas.  While Plaintiffs is free to choose its lawyer's and

Mr. Jaegers appears to be qualified, there are ample qualified lawyers residing in Maryland that could have handled the matter that would have avoided the expense of travel and concomitant unproductive travel time.  While Dr. Krishnamurthy does not object to the rates employed, the retention of a Maryland lawyer would have been more efficient to ascertain how Maryland and the 4th Circuit have departed from other circuits in connection with trademark damages.  Further, the time records reflect more than eight lawyers (or timekeepers) that worked on this single motion.  Moreover, even with all that effort, the present motion repeatedly mischaracterizes the record – and much of the mischaracterizations are not relevant to the present application for fees:

1. Contrary to Plaintiff's argument, the Magistrate did not order Dr, Krishnamurthy to authorize the release of his emails from the ISPs because of any misconduct and there is nothing in the January 9, 2013 order that refers to alleged misconduct. The January 9, 20013 order was issued because Dr. Krishnamurthy did not maintain the emails that were sought by Plaintiff.   There was no finding of misconduct or spoliation. Moreover, it would have been incredible that Dr, Krishnamurthy kept every one of his emails dating back to the early 2000s-- the time period in which Plaintiff seeks production.

2. In connection with the email accounts, Dr. Krishnamurthy identified the email addressed that he used.  The fact that there existed other emails addresses that he was associated with does not mean that he used them.  Dr. Krishnamurthy was responsible for the reservation of a number of domain names on behalf of an Indian Partnership that is not a defendant in this case.  He was removed from the partnership in 2011. Email accounts – having no relationship to the Defendant in this action -- are apparently established when a domain name is reserved.  Dr Krishnamurthy did not use (or routinely use) these accounts and, on information and belief, the accounts

15

were dormant.  He produced the few records he had in possession from the

partnership.  The testimony he submitted relating to the email accounts that he used

was accurate as he identified those email account that he actually used.  The mere

existence of other dormant accounts does not in any way undermine the testimony.

There is no contravening evidence to refute his representations.  And common sense

dictates that one person would not use 24 accounts.  As reported by Plaintiffs

> "Counsel for Microsoft said that Microsoft's electronic
> document retention policy is such that it does not have
> documents or information to produce on closed or dormant
> accounts, and also would not have e-mails (sent or received) that
> have been deleted for more than about 60 days (including active
> accounts)." See Plaintiff Motion for fees filed October 10, 2014,
> page 15.

Dr. Krishnamurthy's failure and inability to produce email is not a sanctionable.

Especially in view of the fact that Defendant company itself was essentially a shell

organization.

3. Other alleged misconduct, referring to efforts and actions taken in 2013 were not

done by Dr. Krishnamurthy.  He testified that the members of the Indian Partnership

still have access to the email accounts and his credit card information.  He was not

aware of the unauthorized activity which amounted to charges of less than $10.00.

Krishnamurthy Dec ¶ 19.

4. The actions relating to the phone calls complained of in 2012 are not relevant to the

present contempt proceedings and do not relate to any misconduct.  In 2012 Dr.

Krishnamurthy was seeking to gain control of the domains and access to emails in

connection with his discovery obligations in this case. He was unsuccessful.

Krishnamurthy Dec ¶ 18.

5. In addition, contrary to Plaintiff argument, Dr. Krishnamurthy did not waive all objections to all discovery sought in this matter.  While the court found that Dr. Krishnamurthy waived objections relating to earlier written discovery, the January 9, 2014 order significantly expanded the scope of discovery sought by Plaintiff and Dr. Krishnamurthy had a right to object to the scope and content of the order.

6. Plaintiff's motion also improperly seeks fees for the time spent in responding to Dr. Krishnamurthy **objections** to the January discovery order – which are unrelated to the present contempt proceedings.   The only fees that are contemplated by the Court September 10 Order – (and the consideration of whether the Court also finds that the disobedience of the January 9, 2014 order was willful) -- were associated with the present contempt motion.

7. The Court overruled Dr. Krishnamurthy's objections on March 4, 2014.   Yet Plaintiffs seeks fees dated back to January 21. 2014 and which are unrelated to the contempt.

In addition, Dr. Krishnamurthy should not be required to foot the bill for the extra costs and fees (amounting to $7,146.26)  that largely arises from Plaintiff's decision to selection of California-based lawyers.  Likewise, the use of at least eight timekeepers on the case, "in-house counsel fees," and the pursuant of preparing a mischaracterized record that is irrelevant to the contempt issue should not be recoverable fees.  In summary, the amount of time spent on this simple issue and single motion should shock the conscience of the court. *See Sun Pub. Co., Inc. v. Mecklenburg News, Inc*., 823 F. 2d 818 (4th Circuit 1987).

**IV. CONCLUSION**

For the foregoing reasons, the Plaintiff's application for fees should be denied.

October 27, 2014                                Respectfully submitted,

                                                By:  __/s/_____
                                                Andrew C. Aitken, Esq. No. 06413
                                                Aitken Law Offices
                                                P.O. Box 1810
                                                Wheaton, MD 20915
                                                (301) 537-3299

                                                *Attorney For Defendant Life Technologies*
                                                *Corporation and  Dr. Krishnamurthy*