UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

LIFE TECHNOLOGIES CORPORATION,  Civil No. RWT-10-3527

      Plaintiff,

    v.                 Greenbelt, Maryland

LIFE TECHNOLOGIES CORPORATION, April 19, 2016
et al.,
        Defendants.       2:30 p.m.

--------------------------/

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:     Bodie, Dolina, Hobbs, Friddell and
                       Grenzer, Jr.
                       By: LOUIS E. GRENZER, JR., ESQUIRE
                       305 Washington Avenue
                       Suite 300
                       Towson, Maryland 21204

                       Troutman Sanders LLP
                       By: ERIC M. JAEGERS, ESQUIRE
                       11682 El Camino Real
                       Suite 400
                       San Diego, California 92130

For the Defendants:    Aitken Law Offices
                       By: ANDREW C. AITKEN, ESQUIRE
                       P.O. Box 1810
                       Wheaton, Maryland 20915

Court Reporter         Lisa K. Bankins RMR FCRR
                       United States District Court
                       6500 Cherrywood Lane
                       Greenbelt, Maryland 20770

Proceedings recorded by mechanical stenography,
transcript produced by notereading.

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  The matter now pending before this
 3   Court is Civil Action Number RWT-10-3527, Life
 4   Technologies Corporation, a Delaware corporation versus
 5   Life Technologies Corporation, Montgomery County,
 6   Maryland, et al.  The matter now comes before this Court
 7   for a motions hearing.  Counsel, please identify
 8   yourselves for the record.
 9           MR. GRENZER:  Good afternoon, Your Honor.  Louis
10   Grenzer on behalf of Life Technologies Corporation.  With
11   me is Eric Jaegers.
12           THE COURT:  Good afternoon.
13           MR. AITKEN:  Good afternoon.  Andrew Aitken on
14   behalf of interested party, Dr. Krishnamurthy.
15           THE COURT:  All right.  Well, glad to hear from
16   the plaintiff.
17           MR. JAEGERS:  Thank you, Your Honor.  Eric
18   Jaegers from Troutman Sanders on behalf of the plaintiff.
19   And, Your Honor, would you prefer that I sit or stand at
20   the podium?
21           THE COURT:  I don't have a strong feeling about
22   it.  What I do have a strong feeling about is I need to
23   hear you.  So if sitting there makes it so I can't hear
24   you, I'll probably have to have you go up there.  So make
25   sure if you're sitting there, that's fine.  But be close
```

1    to the mic.

2            MR. JAEGERS:  Yes, sir.  Can you hear me okay

3    right now?

4            THE COURT:  That's fine.

5            MR. JAEGERS:  Your Honor, I'm sure the Court is

6    familiar with the history of this case which has spanned a

7    number of years.

8            THE COURT:  Yes.  It's got some age on it.

9            MR. JAEGERS:  Yes, it does.  And thankfully, we

10   are at the closing bell here as it were in terms of the

11   filings in this case and I will spare the Court any

12   detailed analysis of previous filings in this case to the

13   extent I can and will be as brief as I can today.

14           As to the motion for damages, Your Honor, it

15   took us about four years to get to this point.  The

16   summary judgment hearing was March 12th of 2012 and we're

17   slightly past four years today.  During the four years, as

18   the Court is aware, we have encountered obstacles with

19   regard to our discovery efforts.  The primary obstacles in

20   the post-judgment damages phase discovery was trying to

21   figure out what profits the defendant had made by trading

22   on plaintiff's trademarks and intellectual property.  We

23   sought any sales information, any product information, any

24   kind of revenue information.  We sought information on any

25   customers or suppliers.

1        We were consistently told initially by Dr.

2   Krishnamurthy that there were no products, there were no

3   sales, there were no customers, there were no revenues.

4   And we started into our discovery with more earnest and

5   subsequently discovered that those statements were untrue.

6   And among the things that we discovered were existence of

7   products, the existence of sales and the existence of

8   customers and suppliers.

9        And, Your Honor, I would refer the Court to

10  exhibit -- as to our motion for damages, Your Honor.

11  Exhibit 5 is a CitiBank exhibit with CitiBank documents in

12  it.  And in those documents and I refer the Court

13  specifically to CitiBank 394 and 398.  Those are

14  representations from Dr. Krishnamurthy to CitiBank, a

15  lender or a potential lender regarding products, regarding

16  customers, regarding suppliers.  And page -- CitiBank 398

17  also lists --

18        THE COURT:  What's the Bates number you are

19  referring to?

20        MR. JAEGERS:  Yes, sir.  CitiBank 398.

21        THE COURT:  I got it.  Yes.

22        MR. JAEGERS:  Samples of plasmids and this

23  apparently a CitiBank representative had gone to Dr.

24  Krishnamurthy's business and inspected it in connection

25  with an extension of credit.  Presumably that's what this

was about.  Apparently, Dr. Krishnamurthy had a lab set up
and he was doing research on cloning of molecular and
biologic anitbodies, DNA diagnostic kits.  Many of the
things that the plaintiff is and was intimately involved
with.

          Your Honor may also recall from our 2012
contempt hearings on December 10th and December 18th of
2012 that we introduced some evidence regarding
representations that Dr. Krishnamurthy had made to the
USPTO in connection with his trademark applications that
were at issue in the underlying litigation that resulted
in the summary judgment in March of 2012 where he had
submitted applications for "in use" or "in use and
commerce" applications and the effect there is that that
is a verified representation to the USPTO that the
trademarks are being used currently in commerce.  And if
you'll -- Exhibit 8 to our motion for damages, Your Honor,
is a series of pictures, photographs that
Dr. Krishnamurthy submitted to the USPTO of his current
products.  And many of those had actual product numbers on
them, dates of manufacture and they list the defendant's
address here in Maryland.

          So that's among the evidence that we discovered
and notably, Your Honor, taking a step back, all of the
CitiBank documents and all of the bank documents in this

1   case, we had to go out and issue 13 subpoenas in this case

2   because we just did not get documents from

3   Dr. Krishnamurthy.  We subpoenaed a couple of banks.  We

4   looked at those bank records.  We discovered additional

5   corporate accounts.  We would then subpoena those other

6   banks.  And I think ultimately, we ended up subpoenaing

7   HSBC, Bank of America, CitiBank, Wells Fargo and

8   additionally ended up having to subpoena Paypal.  We had

9   to subpoena godaddy.com, which is an Internet registrar.

10   A total of 13 subpoenas and those subpoenas -- and again

11   this is because we were not getting cooperation.  These

12   were just road blocks that were being constructed by

13   Dr. Krishnamurthy that we had to overcome.  We were not

14   getting documents or cooperation.  So we had to go the

15   route of the compulsory process of the court.  Because he

16   testified under oath in open court here as well as in

17   various declarations that he frankly -- that the defendant

18   never had any sales, no revenues, no customers, nothing.

19   We figured that to be untrue and, of course, the subpoena

20   documents, the CitiBank documents we were just discussing

21   show that that's untrue.

22        In addition, Your Honor, Exhibit 17 to our

23   motion shows representations made by the Krishnamurthys to

24   Wells Fargo of income of $159,000 in 2008.  Exhibit 5,

25   representations to CitiBank of $150,000 of income in 2005.

1    Exhibit 5 also shows an additional separate representation

2    to CitiBank of income of $25,000 in 2002.

3            Your Honor, the HSBC documents which are Exhibit

4    18 show deposits of about $75,000 in the defendant's

5    corporate account.  Exhibit 16 which are the Bank of

6    America records show deposits in the defendant's corporate

7    account of -- the Bank of America account ending in 1477

8    of about $61,000.  Exhibit 16 also shows deposits into

9    defendant's corporate account at Bank of America, this

10   account ending in 1464 of about $58,000.  A federal tax

11   return that we received by subpoena from

12   Dr. Krishnamurthy's accountants, the defendant's

13   accountants shows about $44,000 in distributions to Dr.

14   and Mrs. Krishnamurthy, about $22,000 a piece and that's

15   Exhibit 9.

16           That same tax document, Your Honor, Exhibit 9

17   lists a corporate asset of $247,000 which is expressed as

18   equipment of some kind and Your Honor may recall I believe

19   it was one of the days of our December 2012 contempt

20   hearing where I questioned Dr. Krishnamurthy about that

21   $247,000 piece of equipment and he couldn't remember what

22   it was, couldn't remember where he bought it, could not

23   remember what happened to it.  These are the kinds of

24   things that we're looking for in our damages-related

25   discovery.

1           And the sum total, Your Honor, of the base

2    profits that we are seeking here is $837,265.66, not

3    including any enhancements or prejudgment interest.  In

4    all of those sources of funds -- well, all of the

5    documents supporting those sources of funds, the Wells

6    Fargo documents, CitiBank, everything that I've just

7    mentioned, we never would have seen but for our

8    persistence in this case and we never would have seen

9    those, we never would have seen those in the context of

10   this case if we had relied on Dr. Krishnamurthy to produce

11   them.

12           In, Your Honor, the -- in our filings, we don't

13   have a sales document.  We don't have a sales receipt from

14   the defendant or a purchase order or anything from

15   defendant to any other entity.  We don't know where we

16   would start to get them, number one, and Dr. Krishnamurthy

17   and the defendant certainly have not produced them to us.

18   And so all of the funds that I've just discussed that make

19   up that $837,000 figure, the deposits into the bank

20   accounts, the money spent to purchase whatever equipment

21   was purchased for $247,000, those funds had to have come

22   from somewhere.  They didn't just magically appear and

23   because each of these deposits into the bank accounts and

24   everything else, they're into the defendant's corporate

25   accounts.  We did not -- we received, but in this motion

1   did not include or reference either Dr. or

2   Mrs. Krishnamurthy's individual bank accounts.  We just

3   carved those out.  I don't know whether any sales proceeds

4   ever went to those accounts.  We're not concerned with

5   them.  What we are concerned with are what went into the

6   defendant's corporate accounts.  That money came from

7   somewhere.

8           And there is, Your Honor, the cost -- all the

9   plaintiff has to do is put out a reasoned figure of what

10  its damage calculation is, what we think the defendant's

11  profits are and that is our $837,000 figure which we

12  believe is amply supported by the record with our motion.

13          And it is the infringer's burden to show the

14  evidence of cost of goods sold that might otherwise be

15  deducted from the plaintiff's damage calculation.  And if

16  he fails to do that, Your Honor, the plaintiff's

17  profits -- I'm sorry -- the defendant's profits equal the

18  gross sales and that is what we're seeking here because

19  Dr. Krishnamurthy's filings in this case completely fail

20  to show any cost of goods sold that might otherwise be

21  deducted.

22          And, Your Honor, since the case law that we've

23  cited, some from the District of Maryland, others from

24  various district courts around the country, there is an

25  overriding, there's an overriding principle that

1    recognizes that the defendant is in the best position,

2    sometimes the only position to show sales.  And, Your

3    Honor, I just will mention a couple of quotes from our

4    briefing that because the plaintiffs often do not have

5    access to sales information, courts require plaintiffs

6    only to show evidence of a reasonable estimate of the

7    defendant's sales.  Plaintiff may also use indirect proof

8    to show the defendant's gross sales because the defendant

9    is in the better position to ascertain what those sales

10   and profits are.

11          And when a defendant frustrates the proof of

12   damages either by withholding facts or just through sloppy

13   or bad record keeping, any doubts about the actual

14   assessment of damages will be resolved against the

15   defendant and the Court may calculate the damages at the

16   highest reasonably ascertainable value.  And, Your Honor,

17   that is a quote from the Polo Fashions versus Rabon or

18   Rabonne case, 661 F.Sup. 89, pinpoint cite, page 97.

19          And so, Your Honor, what we have in that

20   $837,000 is our reasonable estimate of the defendant's

21   sales in this case.  Obviously, Dr. Krishnamurthy is in

22   the better position to either, A, show what the cost of

23   goods sold are or, B, show us where the sales documents

24   are and, of course, he did neither.  And in his briefing,

25   he does not attempt to back off of our figure whatever --

1    it was some kind of deduction.  Utterly fails to do that.

2            And so, Your Honor, going back to what I said a

3    moment ago, all of the funds into and out of those bank

4    accounts, there are tens of thousands of dollars into the

5    defendant's corporate bank accounts and these are the

6    accounts -- we asked Dr. Krishnamurthy under oath where

7    does the defendant have bank accounts and he gave us a

8    couple of bank accounts which are banks which we

9    immediately subpoenaed.  And of course, those banks showed

10   absolutely nothing.  But then we -- and those were his

11   personal accounts and then we found out that the defendant

12   actually had this whole slew of other corporate accounts

13   that Dr. Krishnamurthy never told us about and that's

14   where all of this came from.  The representations on

15   credit applications to Wells Fargo and CitiBank, all of

16   the tens and thousands -- I think it's close to $200,000

17   of deposits into these bank accounts.

18           And interestingly, Your Honor, you may recall

19   that there's been even back in December 2012 during our

20   hearing on the first motion for contempt in this case,

21   there's a lot of discussion about the -- what we've termed

22   the related entities which are entities that

23   Dr. Krishnamurthy has in India.  He initially confessed to

24   one of them.  Plaintiff's Indian counsel subsequently

25   unearthed about 14 additional entities in India that

1    listed exclusively Dr. Krishnamurthy and his wife as the

2    sole owners, shareholders and directors.

3           And those entities, the importance of those

4    entities, Your Honor, finally became clear through our

5    subpoenas because if Your Honor will look at the Wells

6    Fargo -- well, any number of the documents, but our point

7    the Court specifically to Wells Fargo, which is Exhibit

8    17, Your Honor.  For example, page -- Wells Fargo 024.

9    And that is a document dealing with a checking and savings

10   statement where Life Tech, Aqua Life and Life Therapeutics

11   are listed as D/B/As of the defendant corporation.  Those

12   three companies, Life Tech, Aqua Life and Life

13   Therapeutics are three of the related entities.  So those

14   related entities in India are here in the State of

15   Maryland conducting business or the defendant is here in

16   the State of Maryland conducting business under their

17   names.

18          And so, Your Honor, in fact, Your Honor, I would

19   also refer you to Wells Fargo 095 which is a Wells Fargo,

20   a clip from a Wells Fargo --

21          THE COURT:  What's the exhibit number?  Give me

22   the exhibit number and then the Bates number.

23          MR. JAEGERS:  Oh, I'm sorry.  Exhibit 17.

24          THE COURT:  17.  Okay.  And the Bates number

25   again?

1          MR. JAEGERS:  Wells Fargo 095.

2          THE COURT:  Okay.

3          MR. JAEGERS:  And that is an actual bank

4    statement from the defendant, Life Technologies

5    Corporation also D/B/A Life Tech, D/B/A Life Therapeutics

6    and D/B/A Aqua Life.  And so, Your Honor, all of the funds

7    that we've identified and for which we seek -- the

8    plaintiff believes they are profits.  This money had to

9    have come from somewhere and there's no rational

10   explanation that we've heard that explains where this

11   money came from.  It had to have come from somewhere.

12   It's our position that its profits from sales.  And

13   Dr. Krishnamurthy has offered no explanation for any of

14   the funds that we're talking about.

15          And, Your Honor, I would just by way of a very

16   brief example, if you look at Exhibit 18 which is HSBC.

17   It's a statement from the HSBC bank account for the

18   defendant and I'd refer the Court specifically to Bates

19   Number 177.

20          THE COURT:  This is exhibit?

21          MR. JAEGERS:  18.

22          THE COURT:  18.  177.  Okay.  I've got it.

23          MR. JAEGERS:  And that is a Life Technologies

24   Corporation bank statement.  And if Your Honor will look

25   down, $20,000 deposit and then a $20,000 debit to Life

1    Therapeutics.  Right on down from that, there's a $10,000

2    deposit and on down is another $10,000 deposit.  And then

3    under the checks and other subtractions, you've got a

4    thousand-dollar withdrawal and a $19,000 withdrawal and

5    the $19,000 withdrawal is also -- looks to be a debit from

6    Life Technologies Corporation for the benefit of Life

7    Holdings, Limited in Valor, India which is yet another of

8    the related entities.

9           And so, Your Honor, the point being is that

10   these are tens and thousands of dollars.  I think the

11   total net of deposits just into the bank accounts is

12   around $200,000.  Where did this money come from?  It had

13   to have come from profits, sales.  Some source generated

14   the funds that are in these accounts and there is no

15   explanation of it.  Plaintiff seeks those because they

16   went into the defendant's corporate accounts.  We seek

17   those as damages.

18          And, you know, it was -- it's

19   Dr. Krishnamurthy's and the defendant's obligation to

20   rebut the presumption that the funds are entirely

21   attributable to the defendant's infringing sales.  And,

22   Your Honor, I cite to -- one of the cases we cited in our

23   briefing is Interstellar Starship Services versus Epix and

24   it's a District of Oregon case that calls out exactly what

25   we're talking about.  That the plaintiff must meet only a

1    minimal burden to trigger the rebuttable presumption that

2    the funds are entirely attributable to infringing

3    activity.

4           Not only has he not successfully rebutted that

5    presumption, Your Honor, there's been virtually no effort

6    to rebut it or even address it.  And in plaintiff's view

7    anyway, this failure is an implicit acknowledgment that

8    the funds represent sales.

9           He's had every chance to explain.  He's had

10   every chance to come up with documentation saying no,

11   plaintiff, you're wrong, this is where these moneys came

12   from.  I think variably he in his opposition to our

13   motion, Your Honor, he claimed that he made loans to the

14   defendant.  But if you'll look at our briefing at pages 3

15   and 4 of our reply, you'll see -- and if you look at the

16   documentation, Your Honor, the statements and

17   documentation that Dr. Krishnamurthy put forward are for

18   putative loans to I guess to the company he claims.  But

19   those are in 2009.

20          And if you'll look back at our bank statements

21   such as the HSBC document that we're just looking at of

22   these tens of thousands of dollars entering the accounts,

23   that's 2008.  So if all of these deposits, tens and

24   thousands, hundreds of thousands of dollars going into

25   these bank accounts in 2008, what difference does it make

1    if he claims that he made the loans to the company in

2    2009?  The loans can't explain the funds.

3             So, Your Honor, did you have any further

4    questions about our evidence?

5             THE COURT:  No.  I think you've adequately

6    covered it.  You've also got a motion for attorney's fees

7    and let me hear you on that.

8             MR. JAEGERS:  Yes, sir.  Yes, sir.  Absolutely.

9             Your Honor, at every opportunity in this case,

10   the defendant and the Krishnamurthys have thwarted the

11   plaintiff's discovery efforts.  They have ignored the

12   rules of discovery.  They have ignored, flatly ignored

13   multiple orders from this court which as the Court is

14   aware resulted in two motions for contempt, both of which

15   the Court granted.  They've refused to produce relevant

16   and material damages related documents.  Dr. Krishnamurthy

17   has testified untruthfully, certainly in our view.  But I

18   think the Court's previous statements in this case, you

19   know, justify our claim that it's been dishonest

20   testimony.

21            But every single step of the way, we have been

22   met with obstacle after obstacle after obstacle simply in

23   pursuit of damages related discovery and this is not --

24   should not have been brain surgery.  It should not have

25   lasted four years.  It should not have required 13

1   subpoenas.  It should not have required -- I think we had

2   15 extensions of the discovery period and I think we had

3   10 or 12 status conferences with Magistrate Judge

4   Connelly.  And as a direct and proximate result of that

5   misconduct, plaintiff's fees and costs have been

6   needlessly compounded and increased.  Two motions to

7   compel, two motions for contempt, three days of

8   evidentiary contempt hearings we had to attend.  I had to

9   fly here again.  This is my sixth trip here on this case,

10  Your Honor, and the fifth one in the post-judgment phase

11  of this case.  But I had to fly here and attend an

12  evidentiary discovery hearing.  I mentioned the subpoenas

13  and the status conferences and the extensions.

14          And the Court may recall that, you know, the

15  plaintiff -- that Dr. Krishnamurthy refused to give up a

16  single email in this case.  And we figured that with all

17  of his related entities doing business here in the United

18  States, since he was not producing sales documents to

19  support our damages, we wanted his emails because we felt

20  like those emails would be revealing in the context of the

21  damages that we were seeking to prove.

22          Not only did he not give us a single email, but

23  he forced us to go to his email service providers like

24  Yahoo and Google to try to get those emails.  And it took

25  us over, it took us over a year to get to the point where

1    Dr. Krishnamurthy finally signed the email consent forms

2    that ultimately we submitted to Google and Yahoo and

3    Hotmail and his employer.  And Your Honor may recall that

4    that was the -- that Judge Connelly ordered him to sign

5    the consent forms.  He refused.  Filed objections.  Your

6    Honor I believe on March 4th of 2014 overruled those

7    objections.  Ordered Dr. Krishnamurthy to sign the consent

8    forms and he still refused.  So we filed our second motion

9    for contempt, which took another six months and finally,

10   Dr. Krishnamurthy after the Magistrate Judge Connelly

11   granted our second motion for contempt and Your Honor, Dr.

12   Krishnamurthy appealed that to you.  You overruled his

13   objections and finally in about -- I can't recall, but I

14   want to say September or October of 2014, he signs the

15   email consent forms.  We had cooperation from Yahoo and

16   Hotmail and his employer.  Google, however, was not as

17   cooperative.

18          And, Your Honor, you may recall part of our

19   search was -- part of our discovery efforts was to find

20   out, okay, what is the universe of email accounts that Dr.

21   Krishnamurthy has used in connection with his business.

22   And, Your Honor, I would refer you to -- there is a list

23   in our motion for attorney's fees at page 9 of our motion.

24   There's a chart on page 9 that extends over to page 10.

25          THE COURT:  Memo or the exhibit?

1          MR. JAEGERS:  I'm sorry.  The actual memo in

2    support of our motion for fees.

3          THE COURT:  Page 9?

4          MR. JAEGERS:  Page 9.  Yes, sir.  And it does

5    not have an ECF number on it because it was filed under

6    seal.  But you should see a chart beginning on page 9.

7          THE COURT:  Okay.

8          MR. JAEGERS:  And on the left are the emails

9    that Dr. Krishnamurthy told us under oath was the universe

10   of his emails.  And on the right, spilling over onto page

11   10 is the list of email addresses that we located for

12   Dr. Krishnamurthy through our subpoenas.  And you'll note

13   that the first 18 are Gmail addresses.

14          And so Google -- and I won't go into the

15   details, Your Honor, but the details are addressed in our

16   pleadings in this case with this motion and also in

17   previous ones.  But basically Google refused to cooperate

18   in terms of giving us the actual content of the emails.

19   It was their position supported by various case law around

20   the country that the Storage Communications Act, the SCA

21   did not require them to do that.

22          Notwithstanding that, Your Honor, the point is

23   that all of these email addresses, we had to -- we knew

24   about a couple of them.  When we subpoenaed some of the

25   banks, we found out a few more.  When we subpoenaed Paypal

1    and Godaddy.com which is the Internet registrars, we found

2    out or discovered a whole bunch more and then finally when

3    we subpoenaed Google, they gave us several more.

4            And so the point, Your Honor, is that when

5    Google decided or when Google told us, you know, we'll

6    give you the header information, but we're not going to

7    give you the content of the emails, in fact, Your Honor,

8    you know, I believe it is Exhibit 18 is the Google -- I

9    believe that's exhibit -- yes, sir.  No.  Actually, Your

10   Honor, it's Exhibit 17 to our fee motion.  It's a lot of

11   the documents in that Google exhibit are just a jumbled

12   mess of what appears to be nonsense.  That's all Google

13   would give us.

14           And the point, Your Honor, is that Google came

15   back to us and said if you'll get Dr. Krishnamurthy to

16   send us the passwords for his Gmail accounts, we'll be

17   happy to give you whatever is in there.  Well, Dr.

18   Krishnamurthy, of course, said he couldn't remember any

19   passwords to the subject ones.  And, Your Honor, the

20   reason that is important is that if you'll check Exhibit

21   19 and keep Exhibit 17 open as well, the documents we

22   ultimately got from Google showed that -- well, take a

23   step back, Your Honor.  Exhibit 19 to our fee motion, in

24   April of 2015, Dr. Krishnamurthy told the Court that he

25   couldn't recall passwords for these email accounts and

1       that's where we met the deadend with Google.

2               And if you'll look at Google, Exhibit 17 and

3       look at the Bates numbers, the Google Bates numbers 1155,

4       1442 and 1448, you'll see that with regard to that

5       particular email account, he was using that account in May

6       of 2015.  So to Magistrate Judge Connelly and to me it's

7       revealed that he can't recall the passwords as of

8       April 2015.  And that's what Exhibit 19, the email to the

9       Court is about.  And yet, Exhibit 17 which we got from

10      Google shows he was using the accounts as late as May.

11              So these are the roadblocks that we've been

12      running into, Your Honor, and Your Honor will also recall

13      I'm sure that part of the motion, the first motion for

14      contempt in this case dealt with Dr. Krishnamurthy's

15      continuing to use domain names that involve -- that were

16      prohibited under the Court's March 13, 2012 injunction

17      order in this case.  And you'll recall, Your Honor, that

18      we identified some 30 domain names that Dr. Krishnamurthy

19      had continued to use and the Court did find him in

20      contempt in December of 2012 based on his continued -- he

21      was maintaining them.  He was transferring them away from

22      himself to his Indian partners or to maybe alternately to

23      himself under a physical address located in India.  And,

24      of course, all of that was denied.

25              And yet, here is what we have.  In fact if Your

1  Honor, I'm -- within our fee motion, I'm referring to

2  pages 7 and 8 of the actual memorandum, but I'll refer the

3  Court specifically to godaddy.com.  It's Exhibit 9.  And

4  the Court can see the citation there on the pages 7 and 8

5  of our briefing.  But it is Dr. Krishnamurthy, taking at

6  the bottom of page 7 of our briefing.  Dr. Krishnamurthy

7  named Krishna here at 301-789-2988 which is a phone number

8  that we've associated with Dr. Krishnamurthy trying to

9  transfer one of his domains.  And, Your Honor, this is a

10  month and a half after your order of March 13th.  And if

11  you'll switch over to page 8 at the very top under that

12  same entry that we were just talking about, ADV, which I

13  take to mean advised that he changed the contact

14  information on March 27th.  And these are all documents,

15  Your Honor, that we did not have in our first motion for

16  contempt.  We didn't have these documents I believe for

17  like another year.

18          But notwithstanding that, go down to the next

19  entry there toward the top of page 8, referencing Go Daddy

20  Bates number 653.  Krishnamurthy at the same phone number

21  called for help with Lifetechlab.com Transfer.  He's

22  entering an off code at Gaining Registrar.  So he's

23  transferring it to some other registry away from Go Daddy

24  and the screen freezes and it goes on where advised

25  contact gaining registry.

1              Moving down to Go Daddy Bates number 657.

2     Krishna and that phone number is also associated in this

3     case with Dr. Krishnamurthy.  "Customer called in needing

4     to know how to get his emails in his Gmail."

5     Dr. Krishnamurthy called in needing to know how to get his

6     emails in his Gmail account.  These are the same emails

7     that we wanted in this case.  I'm sure there are many,

8     many others that we wanted as well.  But these are the

9     same emails that he said he was deleting.  He didn't have

10    them.

11             So I don't know, Your Honor, what else the

12    plaintiff could have done and, Your Honor, this is a

13    buildup to our -- the theme here which is these fees.

14    This enormous amount of work that the plaintiff did in

15    this case were the direct and sole result of the road

16    blocks just like this, just like I've been discussing.

17    The road blocks that have been put up in this case time

18    after time after time.  And we don't have any other option

19    but to spend time and money in incurring fees on

20    subpoenas, coming to hearings.  And none of this or at

21    least an extremely small percentage, none of that would

22    have been necessary with the cooperation of Dr.

23    Krishnamurthy.

24             And I find it interesting that the papers that

25    Dr. Krishnamurthy filed to say that the fees are

completely out of line because this is way beyond what an average or simple case might be.  There's nothing average or simple about this case.  And, Your Honor, the fees in this case are -- if you had asked me back -- in fact, Your Honor, back in March of 2012, you asked me, well, Mr. Jaegers, how much time do you think you'll need for discovery and I said, Your Honor, assuming there's cooperation, I don't see the need for more than a few months.  Well, we're four years down the road now and, of course, these fees are more significant than they might be in an otherwise normal average or simple case.  I was thinking of a normal, average simple case when I was thinking that we might be able to get this done in a few months.

But notwithstanding that, Your Honor, given what we have had to do in this case just to get to the point where we have some evidence of sales and profits, the fees here are proportional to what we have found.  The fees are I believe about $550,000 that we're claiming and the damages that we are seeking are $837,000.  The base damage is not including the enhancement that we've requested also.

And, Your Honor, I'm not going to take more than another minute or two, but I would like to go back to the issue of that enhancement back for our -- in our first

1     motion for damages.  Your Honor, the case law and

2     specifically, the very recent 2015 Georgia-Pacific case

3     that we cite quite a bit in our briefing.  Under Section

4     1117(b) as in boy, the Court can treble -- the Court must

5     treble the damage award if the infringer intentionally

6     used a counterfeit mark knowing that it was counterfeit.

7             Well, Your Honor, back in 2012, the March

8     hearing, Your Honor, you noted the sameness between the

9     mark that the defendant and the Krishnamurthys used and

10    the plaintiff's mark and I refer the Court specifically

11    and it's included in Exhibit 20 to our damages motion,

12    page 43 of the transcript, specifically lines 12 through

13    14 where Your Honor is talking about the sameness of the

14    marks and you said "it's not close; it's exactly the same

15    name as the name of the plaintiff."  It is a counterfeit

16    mark and they knew it was a counterfeit mark.  They knew

17    that it was a counterfeit mark because, Your Honor, not

18    only is it identical, but one of the trademark

19    applications that they applied for and we did not sue

20    under this other mark.  But the defendant definitely knew

21    about the plaintiff because one of the previous marks

22    belonged to plaintiff -- an older mark of plaintiff is

23    virtually identical to another mark that the defendant and

24    Dr. Krishnamurthy applied for.  So they knew about us.

25    They knew who the mark belonged to.  But even so -- they

1   knew who it belonged to.  But they don't have to know that

2   plaintiffs mark was registered on the principal register.

3   Now, of course, plaintiff's mark is and was registered on

4   the principal register.  But that knowledge is not

5   required by the statute.  All that the plaintiff has to

6   show is that it was a counterfeit mark, which it was and

7   that the defendant used it knowing that it was a

8   counterfeit.  There is no question that the defendant and

9   the Krishnamurthys knew that they were using just a

10  copycat counterfeit mark.

11          So, Your Honor, I think an enhancement under

12  1117(b) is appropriate, a treble damage enhancement is

13  appropriate under that particular section.  But even if

14  the Court does not find 1117(b) applicable here, it can

15  still make an upward adjustment under 1117(a).  And we

16  would request -- we would request a trebling under 1117(a)

17  to the extent that it's not done under Subsection B.

18          Your Honor, we would also as we've discussed in

19  our briefing request that any award under our motion for

20  damages and any award under our motion for fees come in a

21  joint and several order applicable to defendant,

22  applicable to Dr. Krishnamurthy and applicable to Mrs.

23  Krishnamurthy who is an officer of the company.  And, Your

24  Honor, in our -- specifically with regard to our motion

25  for fees, if you'll move back there, Your Honor, there is

 1    Mrs. Krishnamurthy.  Dr. Krishnamurthy has tried to carve

 2    out his wife from this case saying she's in India and

 3    she's never here.  And we've never heard a peep from her

 4    even though we have served her by mail with every single

 5    filing that we've made in this case.  We've not had an

 6    opportunity to learn much about her.  But she was a

 7    signatory on checking accounts.

 8              And, Your Honor, I would refer the Court to --

 9    actually, Your Honor, I would like to pick the specific

10    citation up after Mr. Aitken has a moment to talk.  I

11    can't put my fingers on that right now, but I will come

12    back to it.

13              Mrs. Krishnamurthy has a corporate Life

14    Technologies credit card that she was using as late as

15    November of 2013.  Not only after the Court's March 12th

16    order from 2012 or March 13th order from 2012, but she's

17    using this credit card apparently continuously at least as

18    of late 2013.

19              So she is involved.  She has her hands in this.

20    She's signed documents.  Signed a lot of checks.  Wrote

21    checks on behalf of the defendant to various entities.  I

22    know that she was paying checks to the defendant's

23    accountants off of corporate accounts.  So our point is

24    she is involved in this case.  And back in on March 12th,

25    our hearing on March 12th of 2012, Your Honor, you

1    withheld judgment on whether Mrs. Krishnamurthy was going

2    to be involved.  At least I believe, Your Honor, it may

3    have been December 18th of 2012, our first contempt

4    hearing.  I'm sorry.  You withheld judgment about whether

5    she was going to be subject to any penalties or fines.

6    And so that is still open and we request as we've

7    requested in our filings here that she be included jointly

8    and severally along with Dr. Krishnamurthy and the

9    defendant.  And, Your Honor, if you don't have any

10   questions of me right now, I'm happy to pass it to Mr.

11   Aitken.

12             THE COURT:  All right.  Let me hear from Mr.

13   Aitken.  You may proceed, sir.

14             MR. AITKEN:  Thank you, Your Honor.  It might

15   have been easier to do it motion by motion, but I'll try

16   to turn back the clock a little bit.  I want to initially

17   actually refer you to Exhibit 9 of plaintiff's motion for

18   damages because I think --

19             THE COURT:  Which motion?

20             MR. AITKEN:  This is plaintiff's motion for

21   damages.

22             THE COURT:  Okay.

23             MR. AITKEN:  Exhibit 9.  And this is a copy of

24   the Life Technologies Tax Return.  And throughout this

25   entire proceeding has -- the plaintiff has continuously

1        argued that this tax return shows some sort of profits or

2        income going to the Krishnamurthys.  I don't know if it's

3        just purposeful ignorance of the plaintiff or a deliberate

4        attempt to mislead the Court.  But throughout this return,

5        there is a negative before the distribution.  I'm looking

6        at Bates number Payne Mouldon 000136.  It says

7        distribution, negative 43,916.  Now a negative

8        distribution reflects a loss.  Yet, somehow the plaintiff

9        decides, well, that's income to the Krishnamurthys and

10       they're somehow making money off of this.  We have brought

11       this to their attention multiple times and they either

12       don't understand their mistake, which I seriously doubt.

13       They are very sophisticated litigants here or they're

14       purposely trying to mislead the Court.

15              And I'm going to walk you through a number of

16       examples that are exactly similar to this.  They also

17       count as income to the Krishnamurthys on this same page

18       and it's part of how they add up to their $800,000 worth

19       of sales.  I'm going to get to that in a second.  And

20       that's other investments and that's on page 137, 00137.

21       Line Item 9, $247,000.  Dr. Krishnamurthy explained that

22       this was a capital expenditure purchased by the company

23       and it was lab equipment.  When he went out of business,

24       he lost everything including his equipment that he had

25       purchased.  It was never put into service as the

1    accountant also reflects.  Yet, the plaintiff is perfectly

2    comfortable representing to this Court that this reflects

3    income and not just only income, it reflects sales made by

4    the defendant company.  There's nothing whatsoever that

5    would give any inkling that this is a sales expense.  Yet,

6    they juice up their claim by adding a capital expenditure

7    of lab equipment.  They're fine.  But we'll just call that

8    income and we don't care about the actual facts here.  So

9    there's $300,000 that you should knock off that $800,000

10   claim just out of the blocks.  It's not even, it's not

11   even a matter of debate.  It's not even an argument this

12   can any way become income.

13            They go to great lengths at looking at -- well,

14   let me back up.  I'm going to -- let's -- from the start.

15   But it's just a fantasy that these people are claiming

16   that there was any sales revenue because they have pointed

17   to none and they do this Texas two-step or whatever and

18   claim that all revenue is sales.  Well, that's sort of a

19   basic economic principle that's also incorrect.  Revenue

20   coming to this company throughout its life was investment,

21   investment that Dr. Krishnamurthy made in this company and

22   tried to get it to become a going concern.  But if you

23   look at the tax returns, these investments were tracked

24   and their accountant showed how it consistently lost

25   money.

1          We have provided the tax returns that Dr.

2    Krishnamurthy had which didn't go back to 2002 early on in

3    this case.  But it showed a summary of all revenue earned,

4    all sales earned and it's unequivocal.  Yet, somehow the

5    plaintiff is claiming that he must have lied to the I.R.S.

6    and they're hiding all this income from sales from their

7    accountant.  At this point he was trying to make a

8    business successful.  Yet, he repeatedly reported

9    absolutely no income except for $25,000 that was

10   attributed to web income.  Now back --

11          THE COURT:  Trying to give tax returns biblical

12   significance in terms of the truthfulness of what's

13   contained in them?

14          MR. AITKEN:  Well, if you want to -- I mean I

15   understand.  You can throw the tax returns out.  But are

16   you going to pick and choose what evidence you're going to

17   rely upon, but not the tax returns which were done by a

18   CPA?

19          THE COURT:  Your client hasn't exactly given the

20   plaintiff a smorgasbord of helpful information, has he?

21          MR. AITKEN:  The client didn't have helpful

22   information.  This was an operation that was essentially

23   run from his kitchen table.  It was not a going concern.

24   He was doing the best that he could, but he was full time

25   employed the entire term of this alleged business he was

1     running where according to the plaintiff he was making

2     hundreds of thousands of sales every year.  The fact is he

3     was running out of his residence.  He had no, you know,

4     you can ask as many times as you want for sales documents,

5     but he wasn't making sales and that's why he didn't have

6     sales documents.  You can ask for as many times for vendor

7     documents, but Dr. Krishnamurthy didn't have any.  And

8     that frankly, if he had any, that he would have thrown

9     them out when his business essentially went under in 2010

10    where he essentially went inactive at that point.  But up

11    until 2010, he was still trying to make this a successful

12    business.

13            At the end of the day, they haven't shown any

14    actual sales.  Rather they show various banking

15    transactions which do not equate with sales.  And as Dr.

16    Krishnamurthy has explained, that was his own personal

17    continuing investments in this company.  Dr. Krishnamurthy

18    was working for -- as a doctor for the Armed Services

19    Medical School.  He was making $150,000 a year.  And he

20    was continuing to invest in this venture hoping that it

21    would succeed.  But it did not succeed obviously and as

22    the tax returns continued to show.  I mean Dr.

23    Krishnamurthy now is -- his house is in foreclosure.  He

24    has no funds and he has a lot of debt.  The very documents

25    that plaintiff cites that they argue show culpability are

1    Dr. Krishnamurthy is seeking loans.  He's seeking loans

2    because he doesn't have income to continue to make this

3    company successful.

4         So he goes to a CitiBank or HSBC and he asks for

5    loans and when he goes in there, admittedly he shades the

6    truth.  He says oh, well, I'm making money here.  But he

7    actually does it in a way in most instances where it's

8    true, where he commingled his actual salary that he's

9    making at his various jobs and using that as a surrogate

10   for the company and he's seeking loans.  He's seeking

11   loans because he doesn't have the capital to continue to

12   proceed.

13        At the end of the day, they have not --

14   plaintiff has not shown a single sale.  They've used a

15   presumption that was actually here at the earliest date.

16   It's a public record of the trademark office where there

17   was a representation made to the trademark office that

18   certain products were made in commerce.  Technically that

19   was made by -- was not made by Dr. Krishnamurthy.  It was

20   made by his counsel.  But he has to live with that

21   representation and we understand that.  You found that

22   that constituted infringement.  But it doesn't create

23   sales that never existed.  That's a judicial inference

24   just like all the other inferences that the plaintiff is

25   trying to request that you take today.

1            Mr. Jaeger went to some length in looking at the

2    Go Daddy -- well, I'm going to get -- I'll wait to the Go

3    Daddy.  But I just -- once again, I'm almost at a loss

4    that here's Dr. Krishnamurthy, trying to seek his Gmail

5    accounts from Go Daddy.  The documents that they're citing

6    are Dr. Krishnamurthy asking them, how can I obtain these

7    emails from Go Daddy?  The plaintiff then somehow blames

8    them for, hey, how come you didn't give us the Gmails.

9    Here he is seeking to get the emails from Go Daddy.  He's

10   unsuccessful.  It shows he doesn't have access.  And he's

11   trying to cooperate and he's unsuccessful.  That's why

12   he's not giving the old emails to plaintiff's counsel.

13   It's not some big conspiracy.  He's actually trying to

14   cooperate and they try to turn that on its head as somehow

15   being uncooperative.

16            The same example is he identified four or five

17   emails that he used.  They come back and say, well, he

18   must be misleading because he has 37 emails.  Well, Dr.

19   Krishnamurthy didn't answer that he used 37 emails.  He

20   answered the question how many he used, which was three or

21   four.  These 37 accounts as we've explained numerous

22   times, but the plaintiff likes a good story to tell the

23   Court, that he must have been using 37 emails constantly.

24   Yet, they don't produce any of these emails from these

25   accounts.  That's because they set these email accounts up

34

1    when you sign up for a web page.  It doesn't mean you use

2    the emails.  They just exist.  They are dormant accounts.

3    He has no idea if there's any activity on it one way or

4    the other.  He's not using it.  He tells counsel that he's

5    using these four or five.  He actually gave them the

6    password for the email that he primarily uses.  The

7    plaintiff did not want Dr. Krishnamurthy to retrieve his

8    own emails because they did not trust him.  So they went

9    out and they decided they would subpoena every single

10   potential email account there ever was under the sun.  It

11   just doesn't make any sense that anybody would use 37

12   emails.  And it's incredulous that they make the argument

13   that, well, he must be hiding all sorts of relevant

14   information in these email accounts where he gave the ones

15   he actually used.  It was three or four like any normal

16   individual used.  Three or four emails.

17          Getting to the various -- well, I'm going to

18   proceed to the four elements of the damages.  One were the

19   credit applications.  The credit applications do not prove

20   that he made any sales.  It proves that he represented to

21   a bank that he made a sale.  That's not --

22          THE COURT:  I'm not supposed to believe that?

23          MR. AITKEN:  Put it into context.

24          THE COURT:  A moment ago you told me I should

25   believe what's on a tax return.  But now you're saying

1    that I should not take into account what he puts on a

2    statement he made to a bank.

3            MR. AITKEN:  Well, the statement of account,

4    he's trying to get credit for the bank.

5            THE COURT:  But it's all right to lie to a

6    creditor, but not all right to lie I.R.S.?

7            MR. AITKEN:  I'm not making excuses for that.

8    But those credit applications also reflected sales of not

9    just Life Technology as defendant.  But it also used his

10   own individual income which he was including in those

11   credit applications.  And as you know, Your Honor, these

12   banks require personal guarantees for these loans anyway.

13   So he's using his own income to try to seek financing.

14   That doesn't mean that there were sales.  He's suggesting

15   to these people that he intends to makes sales.  These are

16   where the business that he intends to operate under.

17           They also look at the banking activity and the

18   banking activity once again is not a reflection of sales.

19   A deposit into a bank account is not a reflection of any

20   sale.  Had there been sales, you would have seen banking

21   activity reflecting continuous sales and yet to pay your

22   vendors as well.  So it's a business operation that

23   Dr. Krishnamurthy couldn't have been running as a full

24   time employee this entire time of his -- the entire period

25   of this case, which dates back to 2004.

1           They also -- I've addressed the lab equipment

2    once again.  It's just a fallacy and incorrect argument by

3    the plaintiff.  They also talk about foreign entities and

4    what they -- he may or may not have been doing with

5    respect to a foreign partnership.  And as our briefing

6    explained, to the extent there were sales in India, they

7    are not trademark infringements.  Actually, the plaintiff

8    has no rights to the Life Technologies trademark in India.

9    They've been litigating in India for the past five or six

10   years.  They lost that case.  And I frankly believe and

11   based on the amount of effort they've put in this case

12   that they are trying to obtain discovery from

13   Dr. Krishnamurthy that may have helped them with their

14   case against a totally unrelated entity in India that's

15   also operating under the name, Life Technologies.  I mean

16   the whole foreign entity argument is a smoke screen.

17   There was no sales shown at all by any of the foreign

18   entities and they never existed in the United States.

19           Their argument that, well, the fact that they

20   put them on a credit application, D/B/A Life Therapeutics,

21   one of the banks does not show that they had any

22   commercial activities in the United States and they don't

23   even represent that.  It's just a reflection of a name

24   that Life Technologies USA was operating under.  The

25   foreign entities are just totally irrelevant that the

1    plaintiff spent tens of thousands of dollars trying to

2    chase and we believe that it was essentially improper to

3    be doing it in this case because in parallel they are

4    litigating the same or similar case in India which they

5    lost.

6         Getting back to fees, we think the fees are just

7    entirely unreasonable in view of the lack of damages in

8    this case.  As an example, the plaintiff spent

9    approximately $147,000 on a single motion.  That motion

10   for contempt.  That's essentially what many trademark

11   cases in their entirety have been spent according to --

12        THE COURT:  This ain't no ordinary case.  The

13   plaintiff has been met every step of the way with

14   intransigence from your client in terms of complying with

15   orders to producing information, memory lapses about

16   information most people would remember.  I mean this has

17   not exactly been an ordinary case from the standpoint of

18   the plaintiff.

19        MR. AITKEN:  I believe it's not been an ordinary

20   case, but it's not been an ordinary case because the

21   defendant has been unable to produce the materials that

22   they seek.  How can we produce evidence of sales when

23   there are none?  How can we produce evidence of vendor

24   invoices when there are none?  So defendant, they're

25   within their rights, they wanted to check to see if

1    they -- if there's some sort of vast conspiracy that he's

2    been able to hide.  But at the end of the day, there is no

3    evidence that showing that there's any sales to these

4    people.  The emails that they did obtain from some of the

5    people that were cooperative didn't show that there are

6    indications of sales between these various entities and

7    the defendant, including the Gmail account that we

8    provided the plaintiff with the password that Dr.

9    Krishnamurthy used.  I mean there's just at the end --

10   there's no their there.

11          And sure, they can check and that's within their

12   rights to check.  But in my opinion, when they see these

13   tax returns, it's by a single individual and his wife

14   operating out of a residence.  That this case was not --

15   it shouldn't have been an unusual case.  It should have

16   been a case that the tax returns would show a loss over

17   the 12-year existence, should have tempered the amount of

18   fees spent by the plaintiff in this case.  But it didn't.

19   They were granted fees by Your Honor's previous default

20   judgment.  So they thought, well, this is a blank check.

21   We'll just -- we will leave no stone unturned, which they

22   did not.  And then we'll try to stick the bill with

23   Dr. Krishnamurthy.

24          And, sure, Dr. Krishnamurthy could have been

25   more forthcoming.  But, you know, frankly, the motion for

1    contempt, we think we were correct with respect to that.

2    He was ordered to sign documents and to indemnify third

3    parties that he had no relationship to.  Anybody that was

4    ever at a particular residence, they demanded every email.

5    So his former residence, they demanded all emails that

6    were ever associated with Dr. Krishna's further residence.

7    And they went and Dr. Krishnamurthy agreed to give these

8    his whoever bought the residence from him.  And not only

9    that, he agreed to indemnify both plaintiff and the

10   service providers.  We thought that was an improper order.

11   We think it was materially expanded from the original

12   order that Judge Connelly was presented in December.  They

13   amended that.  The Court never even saw the order before

14   it ordered Dr. Krishnamurthy to comply.  We objected.  We

15   lost.  But we brought those objections and we brought the

16   request for protective order in good faith.  We weren't

17   trying to be obstructive.  We just wanted to curtail the

18   scope of discovery to something reasonable.

19           The court thought I guess because of past

20   indiscretions that there would be no restriction on the

21   discovery.  The court essentially ordered that every

22   single email ever written by Dr. Krishnamurthy on 37 email

23   accounts for ten years was discoverable and relevant in

24   this litigation.  I mean the scope of that is just and I

25   find it incredulous.  I've never seen a discovery order

1    that wide and --

2            THE COURT:  Let me ask you this.  The plaintiff

3    is seeking to extend liability both for damages and

4    attorney's fees to not just the Life Technologies

5    corporate defendant, but also to Dr. Krishnamurthy and his

6    spouse.  What is your position on that?

7            MR. AITKEN:  We believe that neither of them

8    should be held to personal liability on this.  They had

9    the opportunity to name Dr. Krishnamurthy as an individual

10   in this case.  They have not.  That was a purposeful

11   decision made by plaintiff years ago.  They named him as a

12   trustee of the assets of the corporation.  They

13   purposefully have not sought individual discovery from

14   Dr. Krishnamurthy.

15           We just heard Mr. Jaegers indicate, well, we

16   don't want to go after Dr. Krishnamurthy's personal bank

17   account because he's not part of this case.  Yet, now they

18   decide, well, it would be convenient to try to hold Dr.

19   Krishnamurthy personally liable for this.  Now that said,

20   we would -- there is some culpability as his role as the

21   president and in connection with the contempt motion where

22   he actually was personally held in contempt for a failure

23   to cooperate in connection with that order.  We think that

24   there may be liability there.  But we believe that no

25   liability should attach for the reasons set forth in our

motion, which is this Court has discretion whether or not they should award fees in a close case like this which we, frankly, think the Court in Caton may be appealed in view of the scope of the order.

I'm really not at liberty to talk too much about Mrs. Krishnamurthy.  It's not my client.  I've never met her.  I have not been in communications with her.  I don't know how to reach her.  I don't think there's been any showing that she's in any way liable for anything in this case.  By her signing a credit application back in 2007 or 2008, I don't think that would give her any liability in this case.

I'd also point out that Dr. Krishnamurthy attempted to follow the rules of the Maryland and with the LLC.  He filed dutifully his LLC tax returns, reported income, losses and investments.  He attempted to shut it down.  But when he saw that it was not going to be -- it didn't make sense to pursue, Your Honor found his -- the manner that he shut it down was incorrect.  He should have given notice to the plaintiff's counsel or the plaintiff as being a creditor of the assets of the company.  He wasn't aware of that procedure at the time.  He thought that he could shut it down and the liability would rest with the company.

At the end of the day, we don't think there

 1     should be any liability with respect to either of the

 2     individuals personally.  And we don't think that the

 3     plaintiff has made the case for it.

 4          THE COURT:  All right.  Let me hear from Mr.

 5     Jaegers again.

 6          MR. JAEGERS:  Yes, sir, Your Honor.  Thank you.

 7     And I do want to refer the Court to that citation that I

 8     mentioned while I was speaking earlier that I couldn't put

 9     my fingers on and I didn't want to take too much time to

10     locate it.

11          THE COURT:  All right.

12          MR. JAEGERS:  We were talking about Mrs.

13     Krishnamurthy and this actual dovetails nicely into what

14     Mr. Aitken was saying just now.  With regard to Mrs.

15     Krishnamurthy's involvement in this case, I had referenced

16     to the Court a credit card that was in Life

17     Technologies -- was a Life Technologies credit card in

18     Mrs. Krishnamurthy's name.  And, Your Honor, dealing with

19     our motion for damages at page 15 onto 16, but starting on

20     15, I do refer the Court to Exhibit 18 and that is HSBC

21     Bates number 489, which is a snippet from a MasterCard

22     business card monthly statement showing

23     Mrs. Krishnamurthy's name, J. Krishnamurthy.  It lists an

24     account number and shows November 16 of 2013 with a

25     balance it looks like of a little over $4,000.  So my

1    point there is that not only was she involved, but she was

2    continuing to use corporate credit cards well into this

3    lawsuit, but certainly after the Court's March 13, 2012

4    order.  And our discussion of her involvement in this case

5    there, Your Honor, starts there on 15 and goes to -- onto,

6    spills onto page 17.  And she was as I mentioned writing

7    checks to her accountant as you'll see on page 16 of our

8    motion briefing there still at Exhibit 18, HSBC Bates

9    number 906.

10            So I think we're still continuing to manage

11   these accounts.  Mrs. Krishnamurthy was writing checks.

12   She was an officer of this corporation and I believe Dr.

13   Krishnamurthy has previously testified she was a

14   secretary.  I could be wrong on her position.  But she did

15   have a position.  She was part of this company.  She was a

16   signatory on accounts.  And not only that, she was a

17   signatory, an owner and a shareholder and a director of

18   the related entities that were here in the United States

19   doing business like Technologies doing business under

20   those three -- at least those three referenced ones.

21            And, Your Honor, if you will take a look at I

22   believe in our motion for damages, we included as

23   exhibits, the Articles of Association and Articles of

24   Management as exhibits to our motion for damages.

25   Exhibits 11 through 15 are the Articles of Association and

1    I believe it's Your Honor called -- a Memorandum of

2    Association is I believe what it's called.  But it shows

3    both Dr. and Mrs. Krishnamurthy as managing -- as

4    partners, managing directors, maybe director, but they are

5    owners and those are the companies that are here in the

6    United States doing business.  And I would have expected

7    to have seen some paper -- if our position is wrong and

8    they were not here doing business, I would have expected

9    some paper saying, you know, I, Dr. Krishnamurthy and Mrs.

10   Krishnamurthy we don't own these anymore.  Here's my

11   signature on the shares or share certificates transferring

12   these interests away.

13          I would have expected to see -- Your Honor, also

14   part of our evidence shows that Dr. Krishnamurthy had

15   registered these three entities with the State of Maryland

16   as, you know, doing business as trade names.  And I would

17   have expected something -- if they were not here doing

18   business in the United States, I would have expected to

19   see something that terminated those trade name

20   applications and grants from the State of Maryland to

21   these related entities that are here doing business

22   apparently in the United States and in this district.

23          But now Your Honor, I want to go back to one

24   thing that Mr. Aitken said that I -- I'll just say I

25   disagree strongly with regarding the tax returns.

1    Specifically with regard to the $247,000 in equipment, our

2    point is that money had to have come from somewhere to

3    purchase that equipment.  We don't have an explanation of

4    where it came from.  Did he find it on the street and it

5    was -- and he didn't pay anything for it, but it was of

6    some value?  We don't know.  And it's our position as

7    plaintiff that funds came from somewhere, sales of

8    infringing products is our position, purchased a piece of

9    equipment that was $247,000.  It's listed on the tax

10   return.  And, poof, the equipment goes -- just vanishes.

11   And so our position is we think it's a result of profits

12   from sales of infringing items.  And it's Dr.

13   Krishnamurthy's burden to say no, this is where the money

14   came from and look at this document that proves that what

15   I say is correct.  We have no document.  In fact, we don't

16   even have a statement of where the money came from to

17   purchase the equipment.

18          But now, Your Honor, going back to the issue of

19   Mrs. Krishnamurthy and her involvement here, I don't know

20   why she has not shown up in this lawsuit.  I've certainly

21   never met her.  Apparently, Mr. Aitken neither has either.

22   But to the extent that she had an interest in this lawsuit

23   certainly as an interest, some kind of interest in not

24   becoming a part of any liability --

25          THE COURT:  Mr. Aitken makes much of or asked me

1    to attribute some significance to the fact that neither of

2    them have officially been made defendants in this case.

3    What is your response to that?

4           MR. JAEGERS:  Well, Your Honor, they have not

5    been named, officially in this case and frankly, you know,

6    we had not done that after the summary judgment hearing.

7    I think it may have been too late to do it at that point

8    either.  But our position, Your Honor, is that the

9    officers of a corporation can be held personally liable

10   for the company's trademark infringement.  And I cite the

11   Court to one of the cases that we cited which is a

12   District of Maryland case, Microsoft versus Maryland

13   Micro, a 2003 case.  "An officer can be liable if they

14   direct, control, ratify, participate in or is it the

15   moving force behind the infringing activity."  Certainly,

16   that's Dr. Krishnamurthy across the board.  But Mrs.

17   Krishnamurthy as well.  Control, ratify, participate in.

18   Absolutely that applies to her.  And an additional case

19   that we cited from the Second Circuit, Your Honor, Getty

20   Petroleum versus Barco.  The defendant and the

21   Krishnamurthys can be held jointly and severally liable

22   for the attorney's fees, not just the underlying damages

23   for any trademark infringement.

24           So the fact that they are not named individually

25   as parties in this lawsuit, that does not mean that

1    liability cannot extend to them.  And so from our

2    position, not only may they be held personally jointly,

3    severally liable, but I think the Court can do that

4    without a stretch or a leap of any kind.  There's case law

5    authority there --

6            THE COURT:  What about extending liability to

7    the wife when she has not been brought before this Court?

8            MR. JAEGERS:  Your Honor, her -- I'm sorry.  Did

9    I cut you off?

10            THE COURT:  No.  That's all right.

11            MR. JAEGERS:  Her lack of participation in this

12    lawsuit is completely of her own doing.  And like I said

13    earlier, we have served her with -- at the same home

14    address, we have served her with every -- paper copies of

15    every single document in this case.  And surely she knows

16    about it and if she's been in -- well, Dr. Krishnamurthy

17    claims that she's been in India this whole time, Your

18    Honor.  But the documents that we submitted show that

19    she's been back and forth.

20            There are documents -- we got a couple of emails

21    from Dr. Krishnamurthy's employer through our subpoena and

22    the consent form that we served on him that show emails

23    talking about Dr. and Mrs. Krishnamurthy going to visit

24    the get-togethers and barbecues here in the United States.

25    She's been back here and they've been -- I don't know what

1    their marital status really is.  But certainly these

2    emails discuss in the 2013 I believe timeframe that she's

3    been back here and that they're going over to friends and

4    visiting.  I find her lack of involvement in this case

5    purposeful in a very stick-your-head-in-the-sand kind of

6    way and I don't think that that exculpates her from any

7    liability in this case at all.

8              THE COURT:  How much evidence of record is there

9    in this case of what you just said in terms of her

10   deliberately avoiding this case and avoiding any --

11             MR. JAEGERS:  Well, Your Honor, other than her

12   lack of participation, that's her not showing up.  But if

13   Your Honor will allow me a moment, I will find the

14   citation that we made to -- I believe, Your Honor, it must

15   be in -- Your Honor, it is our motion for damages and I

16   cite the Court to page 17.  Right toward the top and, Your

17   Honor, it looks like it's Exhibit -- I think I may have it

18   incorrectly labeled as Exhibit 10.  No.  It is correctly

19   labeled as Exhibit 10, USUHS and there's several citations

20   there and those citations show a series of email

21   conversations from December 2013 to 2014 in which he is

22   corresponding with others about attending get-togethers

23   with Ms. Krishnamurthy.

24             THE COURT:  This is on page 17 of your --

25             MR. JAEGERS:  Page 17 of our memorandum.

1          THE COURT:  Well, if I understand correctly, Mr.

2     Aitken is here today representing Dr. Krishnamurthy.

3     Correct?

4          MR. JAEGERS:  Yes, sir.

5          THE COURT:  And the -- and I believe he's

6     appearing on behalf of the corporation as well.  Is that

7     correct, Mr. Aitken?

8          MR. AITKEN:  Technically, the corporation is

9     dissolved and I'm not sure if I can represent a company

10    that's dissolved.  I'm representing Dr. Krishnamurthy as a

11    trustee of the assets of the corporation.

12         THE COURT:  Then the bottom line is you do

13    represent the corporation.  Although it may be in

14    dissolution, the directors of the corporation act as

15    trustees in dissolution.  So that if it can be revived, it

16    would be against the corporation.  If not, it would be the

17    assets of the corporation.  It is held by the trustees in

18    dissolution under Maryland law.  Right?

19         MR. AITKEN:  My understanding of the Maryland

20    law is once it's dissolved, I can't represent them.

21    That's why all my pleadings have been --

22         THE COURT:  I think if you look carefully, I

23    think you'll find that even if a corporation is in

24    dissolution, it can sue and be sued in that name.  But

25    that the defense of the case or the prosecution of the

1    case as the case may be is done by the trustees in

2    dissolution on behalf of the corporation.

3              MR. AITKEN:  I'm not certain of the law there,

4    Your Honor.  I've been retained --

5              THE COURT:  But you do not purport to represent

6    the wife?

7              MR. AITKEN:  I do not represent the wife.  I've

8    never spoken to her.  I don't have the authority to

9    represent her.

10             THE COURT:  All right.  Counsel, let me tell you

11   this.  I have another matter scheduled at 4 that's not

12   going to be too long.  So why don't we take a -- we've

13   been going a long time anyway.  So we need a break.  Why

14   don't we recess this case?  The other case involves a

15   defendant in custody who needs to be brought to the

16   courtroom.  So I'll take a break.  As soon as he comes in,

17   I'll hear the other matter.  It will be fairly brief and

18   then we'll finish this up then.  Okay?

19             MR. AITKEN:  Thank you, Your Honor.

20             MR. JAEGERS:  Yes, sir.  Thank you.

21             (Recess.)

22             THE COURT:  I have before me today a series of

23   motions in the case of Life Technologies Corp. versus Life

24   Technologies Corp., a case that dates all the way back to

25   2010.  The case is fairly extraordinary in terms of the

1     intransigence and multiple barriers that the defendant

2     corporation and its principal officer, Dr. Krishnamurthy,

3     put up in the path of the plaintiff's efforts to establish

4     its case and establish its damages for the claims that it

5     brought in its complaint before this court.

6                I have before me today a motion for an award of

7     damages.  That's Numbers 175 and 176, motions for fees,

8     Numbers 187 and 188 and lastly a defendant's motion to

9     strike, 194, relates to the momentary untimeliness of a

10    filing.  I'm not about to strike something that's been

11    filed within minutes of when it was due and I will,

12    therefore, deny the motion to strike, Number 194.  And to

13    the extent that the filing was untimely under the

14    circumstances of a few minutes delay, I would grant an

15    extension of time to file it in any event.  So we will

16    take care of that one rather quickly.

17                So I'm going to give you a decision on almost

18    everything that's before me today orally.  I will request

19    that the plaintiff's counsel embody this in an order to be

20    submitted to me to be reviewed.  But let me make the

21    overall determinations that will be incorporated into a

22    order that the plaintiff's counsel can prepare.

23                The history of this case is long and painful and

24    I'm not going to try to go through every aspect of it.

25    The case is a very mature case, let's put it that way.  It

1    relates to claims made by the plaintiff corporation for

2    violations of the Lanham Act in the form of trademark

3    infringement and it has been before me.  Relief has been

4    granted in part in this case.  What was left was the what

5    would otherwise be a relatively simple determination of

6    damages.  And but that task turned out to be quite an

7    extraordinary task in relation to what it should have

8    been.  And the plaintiff was required to go through

9    extensive detective work that it should not have had to go

10   through, but for the intransigence of the corporate

11   defendant and its principal, Dr. Krishnamurthy.  And he

12   has been represented by counsel.  Counsel also represents

13   the corporation which now is in dissolution.  But a common

14   counsel between the corporate entity and the principal or

15   president of the corporate defendant is obvious and

16   apparent in this case.

17           A plaintiff whose trademark has been violated is

18   entitled to recover the defendant's profits, damages and

19   costs.  And if the violation is for a knowing and

20   intentional use of a counterfeit mark, courts are required

21   to award three times a defendant's profits or the

22   plaintiff's damages, whichever is the greater.

23           What has been brought before me today is a

24   heavily documented claim with the best that the plaintiff

25   can do under very trying circumstances, largely the

1    creation of Dr. Krishnamurthy's failure to cooperate in

2    any meaningful way with the discovery processes of this

3    court and the magistrate judge who presided over some of

4    the discovery scuffles in this case.

5            Whereas I find has taken place in this case, the

6    defendant impedes access to the true facts essential to an

7    accurate determination of its profits, the Court may use

8    inferential methods to determine the defendant's profits

9    and the plaintiff is only required to establish a

10   reasonable estimate of the defendant's sales.  If it does

11   so, the burden then shifts to the defendant to prove any

12   costs or deductions from those gross sales.  And if there

13   is not any such showing made, then the plaintiff is

14   entitled to collect profits equal to the defendant's gross

15   sales.  These are principles of law that apply to this

16   that are not in dispute between the parties.

17           The Court is also authorized under Section

18   1117(b) to award prejudgment interest if an award is made

19   under that section and that would be at the federal short

20   term rate plus three percentage points which in this case

21   would be 3%.

22           The plaintiff has done the best that it could

23   under very trying circumstances to establish what it

24   believes would be the appropriate amount of damages.  I

25   have reviewed the extensive documents, the memorandum of

1    the parties and the continued noncompliance by the

2    defendant with the discovery orders issued by this court.

3    And under the circumstances, I am required to as the

4    plaintiff has done in its moving papers to determine

5    profits from the available evidence.  And an award can be

6    made on the basis of the plaintiff's reasonable estimate

7    of the defendant's sales.

8            In this case, the plaintiff has with its

9    documentary evidence and its calculations claims that the

10   defendant's sales are $837,265.66.  I've reviewed all of

11   this and I believe that that is in excess of what would be

12   reasonably attributable to the defendant.  That does not,

13   however, mean that I do not believe that there are richly

14   documented sources of information here from which

15   inferences of profits, substantial profits can be made.

16   And I'll go through where I believe there are reasonable

17   amounts that be calculated.  I'll give you the ultimate

18   mathematical conclusion and then take you through where I

19   got there.

20           I conclude that a reasonable estimate inferred

21   applying the principles that I enumerated as well as the

22   evidence that was -- notwithstanding the defendant's

23   intransigence developed would be a total of $365,349.66 in

24   sales.  I derive that with first with regard to the year

25   2002, the $25,000 income reported on a CitiBank loan

1    application.  For the year 2005, $105,000 again for income

2    reported on a CitiBank loan application.  For 2007, $2,000

3    reported as gross receipts on the defendant's 2010 federal

4    tax return.  For the period 2008 to 2011, an analysis of

5    deposits would indicate a total of $195,017.66, which is

6    derived from deposits into the defendant's corporate

7    accounts consisting of $75,625 into an HSBC account.

8    $61,321 into a Bank of America account ending in 1477.

9    And $58,071.66 in a Bank of America account ending in

10   1464.  I've reduced this amount by $4,668 for costs

11   reflected on the corporate defendant's tax return for

12   2010.  That brings us, as I said, to a grand total of

13   $365,349.66.

14           The defendant has utterly failed to meet its

15   burden to prove any cost or deductions other than what

16   I've already recognized.  And I believe that a trebling of

17   this award is appropriate and, therefore, I will award an

18   amount which trebles the amount that I concluded for a

19   total of $1,096,048.98.  Based upon the period of time

20   from the filing of the complaint through the end of last

21   month, I calculate prejudgment interest at the rate of 3%

22   for a total of $61,332.16, which would bring a total award

23   of the treble amount plus the prejudgment interest of

24   $1,157,381.14.

25           And let me now move to a motion for an award of

1    attorney's fees.  That requires compliance with the

2    leading Fourth Circuit case of Robinson versus Equifax

3    Information Service.  In this case I find that the

4    plaintiff has richly and comprehensively documented the

5    fees and expenses that it is claiming in this case.  I'm

6    not going to diminish it at all.  But I will recognize

7    that they are these 12 nonexclusive factors that the

8    courts embrace when applying a lodestar analysis to the

9    award of fees.

10            As the parties pointed out, this would have been

11   a relatively straightforward case with a fairly modest

12   award being imposed had the defendant proceeded the way a

13   normal defendant would under similar circumstances, but he

14   chose not to.  And therefore, that substantially

15   aggravated and enhanced the legal costs incurred by the

16   plaintiff in the pursuit of a recovery in this case.

17            The fee and cost request in this case I conclude

18   is reasonable.  The Troutman Sanders attorneys in this

19   case billed at a reduced rate.  All of the rates but with

20   one minor exception are presumptively reasonable under our

21   Appendix B of our local rules.  There has been a

22   comprehensive declaration from Royal Craig, an attorney

23   whose ultimate judgment is that the rates are and time

24   spent are both reasonable and fair for attorneys

25   practicing in this judicial district working on a case of

1   unusual complexity.  The complexity of this case being

2   very substantially aggravated by the intransigence of the

3   defendant.

4          And an award for the amount claimed is a very

5   substantial award.  But I find that it is richly

6   documented and deserved in this case because of the

7   actions taken by principally by Dr. Krishnamurthy to

8   obstruct and delay any pursuit of a damage award in this

9   case.  I conclude, therefore, that the requested award of

10  $555,555.35 in fees and costs is appropriate.  And I will

11  impose that.

12         Finally, there's the request that I impose

13  liability in this case jointly on both the corporate

14  defendant as well as on Dr. Krishnamurthy and his wife.  I

15  have no difficulty in imposing the award of both damages

16  and attorney's fees on the corporation, of course, as well

17  as on Dr. Krishnamurthy, who has been the mastermind of

18  everything that's happened before this court.  He's been

19  acting in defiance of orders of this court.  And I have no

20  difficulty in extending these awards to include him

21  personally.  And I will direct that the ultimate judgment

22  in this case be against his corporation which they now

23  tell me is in dissolution, but also against him

24  personally.

25         I'm a bit troubled though about whether I have a

1    significant enough basis to make an award against

2    Dr. Krishnamurthy's wife.  I'm not saying that there could

3    not be a basis for doing so.  But on the basis of the

4    record now, her nonparticipation in this case, the fact

5    that she hasn't been named as a defendant, that she's not

6    been before the court in any other capacity such as

7    Dr. Krishnamurthy who has been before this court as a

8    person who's been required to respond to discovery

9    requests and has deliberately attempted to thwart the

10   plaintiff and the court in obtaining the requisite

11   information.

12        But I will -- I'm not going to extend the award

13   to the wife.  Just to Dr. Krishnamurthy.  That is without

14   prejudice to the right of the plaintiff should the

15   plaintiff desire to do so to file a motion that would

16   provide a more substantial basis to impose an award upon

17   her, potentially without naming her as party, although

18   that would be the cleanest way to do it.  And but as I

19   said, I don't have her footprints all over the infringing

20   acts as well as the obstruction of the plaintiff in its

21   efforts to establish liability that I do with

22   Dr. Krishnamurthy, who has clearly been the mastermind of

23   this corporate entity trying to pretend to be the same

24   entity as the plaintiff and take advantage of its good

25   name and mark.

1              But it is potentially possible that she could

2       be -- this judgment could be extended to her.  But on the

3       basis of what I have before me, I'm reluctant to do that

4       because of due process concerns.

5              I have no such concerns in the case of

6       Dr. Krishnamurthy who together with his counsel who

7       represents the corporation even in dissolution at this

8       time has fully participated in and fully understood what

9       was going on in this case and who attempted to thwart it

10      over and over again.  So I have no difficulty in imposing

11      liability on him personally.

12             So I will ask that counsel for the plaintiff

13      prepare for me a proposed order that would embody these

14      rulings, which you can mention that you're incorporating

15      my oral comments which would be the basis for it.  But I

16      believe that the motions before me other than the motion

17      to strike are well taken and all of them will be granted.

18      And I'll enter judgment as requested with the

19      modifications I made.  Thank you very much.

20             (Proceedings concluded.)

21

22

23

24

25

1          CERTIFICATE OF REPORTER

2

3          I, Lisa K. Bankins, an Official Court Reporter

4     for the United States District Court for the District of

5     Maryland, do hereby certify that I reported, by machine

6     shorthand, in my official capacity, the proceedings had

7     and testimony adduced upon the motions hearing in the case

8     of the Life Technologies Corporation versus Life

9     Technologies Corporation, et al., Civil Action Number

10    RWT-10-3527, in said court on the 19th day of April, 2016.

11         I further certify that the foregoing 60 pages

12    constitute the official transcript of said proceedings, as

13    taken from my machine shorthand notes, together with the

14    backup tape of said proceedings to the best of my ability.

15         In witness whereof, I have hereto subscribed my

16    name, this 10th day of May, 2016.

17

18

19                              Lisa K. Bankins

20                              Lisa K. Bankins
                                Official Court Reporter
21

22

23

24

25

**MR. AITKEN: [16]** 2/12 28/13
28/19 28/22 31/13 31/20 35/22
36/2 36/6 38/18 41/6 50/7 50/18
51/2 51/6 51/18
**MR. GRENZER: [1]** 2/8
**MR. JAEGERS: [24]** 2/16 3/1
3/4 3/8 4/19 4/21 12/22 12/25
13/2 13/20 13/22 16/7 18/25
19/3 19/7 43/5 43/11 47/3 48/7
48/10 49/10 49/24 50/3 51/19
**THE CLERK: [1]** 2/1
**THE COURT: [40]** 2/11 2/14
2/20 3/3 3/7 4/17 4/20 12/20
12/23 13/1 13/19 13/21 16/4
18/24 19/2 19/6 28/11 28/18
28/21 31/10 31/18 35/21 35/23
36/4 38/11 41/1 43/3 43/10
46/24 48/5 48/9 49/7 49/23
49/25 50/4 50/11 50/21 51/4
51/9 51/21

**$**

**$1,096,048.98 [1]** 56/19
**$1,157,381.14 [1]** 56/24
**$10,000 [2]** 14/1 14/2
**$105,000 [1]** 56/1
**$147,000 [1]** 38/9
**$150,000 [2]** 6/25 32/19
**$159,000 [1]** 6/24
**$19,000 [2]** 14/4 14/5
**$195,017.66 [1]** 56/5
**$2,000 [1]** 56/2
**$20,000 [2]** 13/25 13/25
**$200,000 [2]** 11/16 14/12
**$22,000 [1]** 7/14
**$247,000 [6]** 7/17 7/21 8/21
29/21 46/1 46/9
**$25,000 [3]** 7/2 31/9 55/25
**$300,000 [1]** 30/9
**$365,349.66 [2]** 55/23 56/13
**$4,000 [1]** 43/25
**$4,668 [1]** 56/10
**$44,000 [1]** 7/13
**$550,000 [1]** 24/19
**$555,555.35 [1]** 58/10
**$58,000 [1]** 7/10
**$58,071.66 [1]** 56/9
**$61,000 [1]** 7/8
**$61,321 [1]** 56/8
**$61,332.16 [1]** 56/22
**$75,000 [1]** 7/4
**$75,625 [1]** 56/7
**$800,000 [2]** 29/18 30/9

**$837,000 [4]** 8/19 9/11 10/20
24/20
**$837,265.66 [2]** 8/2 55/10

**0**

**000136 [1]** 29/6
**00137 [1]** 29/20
**024 [1]** 12/8
**095 [2]** 12/19 13/1

**1**

**10 [5]** 17/3 18/24 19/11 49/18
49/19
**10th [2]** 5/7 61/16
**11 [1]** 44/25
**1117 [6]** 25/4 26/12 26/14 26/15
26/16 54/18
**1155 [1]** 21/3
**11682 [1]** 1/16
**12 [3]** 17/3 25/12 57/7
**12-year [1]** 39/17
**12th [4]** 3/16 27/15 27/24 27/25
**13 [5]** 6/1 6/10 16/25 21/16 44/3
**137 [1]** 29/20
**13th [2]** 22/10 27/16
**14 [2]** 11/25 25/13
**1442 [1]** 21/4
**1448 [1]** 21/4
**1464 [2]** 7/10 56/10
**1477 [2]** 7/7 56/8
**15 [5]** 17/2 43/19 43/20 44/5
44/25
**16 [5]** 7/5 7/8 43/19 43/24 44/7
**17 [12]** 6/22 12/8 12/23 12/24
20/10 20/21 21/2 21/9 44/6
49/16 49/24 49/25
**175 [1]** 52/7
**176 [1]** 52/7
**177 [2]** 13/19 13/22
**18 [8]** 7/4 13/16 13/21 13/22
19/13 20/8 43/20 44/8
**1810 [1]** 1/19
**187 [1]** 52/8
**188 [1]** 52/8
**18th [2]** 5/7 28/3
**19 [4]** 1/6 20/21 20/23 21/8
**194 [2]** 52/9 52/12
**19th [1]** 61/10

**2**

**20 [1]** 25/11
**2002 [3]** 7/2 31/2 55/25
**2003 [1]** 47/13
**2004 [1]** 36/25
**2005 [2]** 6/25 56/1

**2007 [2]** 42/10 56/2
**2008 [5]** 6/24 15/25 15/25 42/11
56/4
**2009 [2]** 15/19 16/2
**2010 [5]** 32/9 32/11 51/25 56/3
56/12
**2011 [1]** 56/4
**2012 [15]** 3/16 5/6 5/8 5/12 7/19
11/19 21/16 21/20 24/5 25/7
27/16 27/16 27/25 28/3 44/3
**2013 [5]** 27/15 27/18 43/24 49/2
49/21
**2014 [3]** 18/6 18/14 49/21
**2015 [4]** 20/24 21/6 21/8 25/2
**2016 [3]** 1/6 61/10 61/16
**20770 [1]** 1/23
**20915 [1]** 1/20
**21204 [1]** 1/14
**27th [1]** 22/14
**2988 [1]** 22/7
**2:30 [1]** 1/7

**3**

**30 [1]** 21/18
**300 [1]** 1/14
**301-789-2988 [1]** 22/7
**305 [1]** 1/13
**3527 [3]** 1/3 2/3 61/10
**37 [6]** 34/18 34/19 34/21 34/23
35/11 40/22
**394 [1]** 4/13
**398 [3]** 4/13 4/16 4/20

**4**

**400 [1]** 1/17
**43 [1]** 25/12
**43,916 [1]** 29/7
**489 [1]** 43/21
**4th [1]** 18/6

**6**

**60 [1]** 61/11
**6500 [1]** 1/23
**653 [1]** 22/20
**657 [1]** 23/1
**661 [1]** 10/18

**8**

**89 [1]** 10/18

**9**

**906 [1]** 44/9
**92130 [1]** 1/17
**97 [1]** 10/18

# A

**absolutely [4]** 14/10 16/8 31/5 47/18
**access [3]** 10/5 34/10 54/6
**according [2]** 32/1 38/11
**account [19]** 7/5 7/7 7/7 7/9 7/10 13/17 21/5 21/5 23/6 35/10 36/1 36/3 36/19 39/7 41/17 43/24 56/7 56/8 56/9
**accountant [4]** 30/1 30/24 31/7 44/7
**accountants [3]** 7/12 7/13 27/23
**accounts [36]** 6/5 8/20 8/23 8/25 9/2 9/4 9/6 11/4 11/5 11/6 11/7 11/8 11/11 11/12 11/17 14/11 14/14 14/16 15/22 15/25 18/20 20/16 20/25 21/10 27/7 27/23 34/5 34/21 34/25 34/25 35/2 35/14 40/23 44/11 44/16 56/7
**acknowledgment [1]** 15/7
**across [1]** 47/16
**act [3]** 19/20 50/14 53/2
**acting [1]** 58/19
**Action [2]** 2/3 61/9
**actions [1]** 58/7
**activities [1]** 37/22
**activity [6]** 15/3 35/3 36/17 36/18 36/21 47/15
**acts [1]** 59/20
**add [1]** 29/18
**adding [1]** 30/6
**addition [1]** 6/22
**address [4]** 5/22 15/6 21/23 48/14
**addresses [3]** 19/11 19/13 19/23
**adduced [1]** 61/7
**adequately [1]** 16/5
**adjustment [1]** 26/15
**admittedly [1]** 33/5
**ADV [1]** 22/12
**advantage [1]** 59/24
**afternoon [3]** 2/9 2/12 2/13
**age [1]** 3/8
**aggravated [2]** 57/15 58/2
**Aitken [12]** 1/18 1/19 2/13 27/10 28/11 28/13 43/14 45/24 46/21 46/25 50/2 50/7
**al [3]** 1/6 2/6 61/9
**alleged [1]** 31/25
**allow [1]** 49/13
**almost [2]** 34/3 52/17

**alternately [1]** 21/22
**although [2]** 50/6 59/11
**amended [1]** 40/13
**America [6]** 6/7 7/6 7/7 7/9 56/8 56/9
**amount [9]** 23/14 37/11 39/17 54/24 56/10 56/18 56/18 56/23 58/4
**amounts [1]** 55/17
**amply [1]** 9/12
**analysis [3]** 3/12 56/4 57/8
**ANDREW [2]** 1/19 2/13
**anitibodies [1]** 5/3
**answer [1]** 34/19
**anymore [1]** 45/10
**apparent [1]** 53/16
**appealed [2]** 18/12 42/3
**APPEARANCES [1]** 1/11
**Appendix [1]** 57/21
**applicable [4]** 26/14 26/21 26/22 26/22
**application [4]** 37/20 42/10 56/1 56/2
**applications [10]** 5/10 5/13 5/14 11/15 25/19 35/19 35/19 36/8 36/11 45/20
**applied [2]** 25/19 25/24
**applies [1]** 47/18
**apply [1]** 54/15
**applying [2]** 55/21 57/8
**April [4]** 1/6 20/24 21/8 61/10
**April 2015 [1]** 21/8
**Aqua [3]** 12/10 12/12 13/6
**argue [1]** 32/25
**argued [1]** 29/1
**argument [5]** 30/11 35/12 37/2 37/16 37/19
**Armed [1]** 32/18
**Articles [3]** 44/23 44/23 44/25
**ascertain [1]** 10/9
**ascertainable [1]** 10/16
**aspect [1]** 52/24
**assessment [1]** 10/14
**asset [1]** 7/17
**assets [4]** 41/12 42/21 50/11 50/17
**associated [3]** 22/8 23/2 40/6
**Association [3]** 44/23 44/25 45/2
**assuming [1]** 24/7
**attach [1]** 41/25
**attempt [2]** 10/25 29/4
**attempted [4]** 42/14 42/16 59/9 60/9
**attend [2]** 17/8 17/11

**attending [1]** 49/22
**attorney [2]** 33/5 57/23
**attorney's [6]** 16/6 18/23 41/4 47/22 57/1 58/16
**attorneys [2]** 57/18 57/24
**attributable [3]** 14/21 15/2 55/12
**attribute [1]** 47/1
**attributed [1]** 31/10
**authority [2]** 48/5 51/8
**authorized [1]** 54/17
**Avenue [1]** 1/13
**average [4]** 24/2 24/2 24/11 24/12
**avoiding [2]** 49/10 49/10
**award [23]** 25/5 26/19 26/20 42/2 52/6 53/21 54/18 54/18 55/5 56/17 56/17 56/22 56/25 57/9 57/12 58/4 58/5 58/8 58/9 58/15 59/1 59/12 59/16
**awards [1]** 58/20

# B

**backup [1]** 61/14
**balance [1]** 43/25
**bank [27]** 5/25 6/4 6/7 7/5 7/7 7/9 8/19 8/23 9/2 11/3 11/5 11/7 11/8 11/17 13/3 13/17 13/24 14/11 15/20 15/25 35/21 36/2 36/4 36/19 41/16 56/8 56/9
**banking [4]** 32/14 36/17 36/18 36/20
**Bankins [4]** 1/22 61/3 61/19 61/20
**banks [7]** 6/3 6/6 11/8 11/9 19/25 36/12 37/21
**barbecues [1]** 48/24
**Barco [1]** 47/20
**barriers [1]** 52/1
**base [2]** 8/1 24/20
**basic [1]** 30/19
**basis [7]** 55/6 59/1 59/3 59/3 59/16 60/3 60/15
**Bates [11]** 4/18 12/22 12/24 13/18 21/3 21/3 22/20 23/1 29/6 43/21 44/8
**becoming [1]** 46/24
**behind [1]** 47/15
**bell [1]** 3/10
**belonged [3]** 25/22 25/25 26/1
**benefit [1]** 14/6
**beyond [1]** 24/1
**biblical [1]** 31/11
**bill [1]** 39/22
**billed [1]** 57/19

**B**

biologic [1] 5/3
blames [1] 34/7
blank [1] 39/20
blocks [4] 6/12 23/16 23/17
 30/10
board [1] 47/16
Bodie [1] 1/12
bottom [2] 22/6 50/12
Box [1] 1/19
boy [1] 25/4
brain [1] 16/24
brief [3] 3/13 13/16 51/17
briefing [10] 10/4 10/24 14/23
 15/14 22/5 22/6 25/3 26/19 37/5
 44/8
buildup [1] 23/13
bunch [1] 20/2
burden [5] 9/13 15/1 46/13
 54/11 56/15
business [20] 4/24 12/15 12/16
 17/17 18/21 29/23 31/8 31/25
 32/9 32/12 36/16 36/22 43/22
 44/19 44/19 45/6 45/8 45/16
 45/18 45/21

**C**

calculate [2] 10/15 56/21
calculated [1] 55/17
calculation [2] 9/10 9/15
calculations [1] 55/9
California [1] 1/17
Camino [1] 1/16
capacity [2] 59/6 61/6
capital [3] 29/22 30/6 33/11
card [5] 27/14 27/17 43/16
 43/17 43/22
cards [1] 44/2
carefully [1] 50/22
carve [1] 27/1
carved [1] 9/3
Caton [1] 42/3
CERTIFICATE [1] 61/1
certificates [1] 45/11
certify [2] 61/5 61/11
chance [2] 15/9 15/10
chart [2] 18/24 19/6
chase [1] 38/2
Cherrywood [1] 1/23
choose [1] 31/16
chose [1] 57/14
Circuit [2] 47/19 57/2
circumstances [5] 52/14 53/25
 54/23 55/3 57/13

citation [4] 22/4 27/10 43/7
 49/14
citations [2] 49/19 49/20
cite [5] 10/18 14/22 25/3 47/10
 49/16
cited [4] 9/23 14/22 47/11 47/19
cites [1] 32/25
CitiBank [17] 4/11 4/11 4/13
 4/14 4/16 4/20 4/23 5/25 6/7
 6/20 6/25 7/2 8/6 11/15 33/4
 55/25 56/2
citing [1] 34/5
Civil [3] 1/3 2/3 61/9
claim [5] 16/19 30/6 30/10
 30/18 53/24
claimed [2] 15/13 58/4
claiming [4] 24/19 30/15 31/5
 57/5
claims [6] 15/18 16/1 48/17
 52/4 53/1 55/9
cleanest [1] 59/18
clear [1] 12/4
client [4] 31/19 31/21 38/14
 42/6
clip [1] 12/20
clock [1] 28/16
cloning [1] 5/2
close [4] 2/25 11/16 25/14 42/2
closing [1] 3/10
code [1] 22/22
collect [1] 54/14
comfortable [1] 30/2
comments [1] 60/15
commerce [3] 5/14 5/16 33/18
commercial [1] 37/22
commingled [1] 33/8
common [1] 53/13
communications [2] 19/20
 42/7
companies [2] 12/12 45/5
company [14] 15/18 16/1 26/23
 29/22 30/4 30/20 30/21 32/17
 33/3 33/10 42/21 42/24 44/15
 50/9
company's [1] 47/10
compel [1] 17/7
complaint [2] 52/5 56/20
complexity [2] 58/1 58/1
compliance [1] 57/1
comply [1] 40/14
complying [1] 38/14
compounded [1] 17/6
comprehensive [1] 57/22
comprehensively [1] 57/4
compulsory [1] 6/15

concern [2] 30/22 31/23
concerns [2] 60/3 60/5
conclude [3] 55/20 57/17 58/9
concluded [2] 56/18 60/20
conclusion [1] 55/18
conducting [2] 12/15 12/16
conferences [2] 17/3 17/13
confessed [1] 11/23
connection [5] 4/24 5/10 18/21
 41/21 41/23
Connelly [5] 17/4 18/4 18/10
 21/6 40/12
consent [5] 18/1 18/5 18/7
 18/15 48/22
consistently [2] 4/1 30/24
consisting [1] 56/7
conspiracy [2] 34/13 39/1
constantly [1] 34/23
constitute [1] 61/12
constituted [1] 33/22
constructed [1] 6/12
contained [1] 31/13
contempt [16] 5/7 7/19 11/20
 16/14 17/7 17/8 18/9 18/11
 21/14 21/20 22/16 28/3 38/10
 40/1 41/21 41/22
content [2] 19/18 20/7
context [3] 8/9 17/20 35/23
continued [4] 21/19 21/20
 32/22 55/1
continuing [5] 21/15 32/17
 32/20 44/2 44/10
continuous [1] 36/21
continuously [2] 27/17 28/25
control [2] 47/14 47/17
convenient [1] 41/18
cooperate [5] 19/17 34/11
 34/14 41/23 54/1
cooperation [5] 6/11 6/14
 18/15 23/22 24/8
cooperative [2] 18/17 39/5
copycat [1] 26/10
Corp [2] 51/23 51/24
corporate [21] 6/5 7/5 7/6 7/9
 7/17 8/24 9/6 11/5 11/12 14/16
 27/13 27/23 41/5 44/2 53/10
 53/14 53/15 56/6 56/11 58/13
 59/23
corporation [30] 1/3 1/6 2/4 2/4
 2/5 2/10 12/11 13/5 13/24 14/6
 41/12 44/12 47/9 50/6 50/8
 50/11 50/13 50/14 50/16 50/17
 50/23 51/2 52/2 53/1 53/13
 58/16 58/22 60/7 61/8 61/9
corresponding [1] 49/22

**C**

**count [1]** 29/17

**counterfeit [9]** 25/6 25/6 25/15 25/16 25/17 26/6 26/8 26/10 53/20

**country [2]** 9/24 19/20

**County [1]** 2/5

**court [59]** 1/1 1/22 1/22 2/3 2/6 3/5 3/11 3/18 4/9 4/12 6/15 6/16 10/15 12/7 13/18 16/13 16/13 16/15 17/14 20/24 21/9 21/19 22/3 22/4 25/4 25/4 25/10 26/14 27/8 29/4 29/14 30/2 34/23 40/13 40/19 40/21 42/1 42/3 43/7 43/16 43/20 47/11 48/3 48/7 49/16 52/5 54/3 54/7 54/17 55/2 58/18 58/19 59/6 59/7 59/10 61/3 61/4 61/10 61/20

**Court's [4]** 16/18 21/16 27/17 44/3

**courtroom [1]** 51/16

**courts [4]** 9/24 10/5 53/20 57/8

**covered [1]** 16/6

**CPA [1]** 31/18

**Craig [1]** 57/22

**create [1]** 33/22

**creation [1]** 54/1

**credit [14]** 4/25 11/15 27/14 27/17 35/19 35/19 36/4 36/8 36/11 37/20 42/10 43/16 43/7 44/2

**creditor [2]** 36/6 42/21

**culpability [2]** 32/25 41/20

**curtail [1]** 40/17

**custody [1]** 51/15

**Customer [1]** 23/3

**customers [5]** 3/25 4/3 4/8 4/16 6/18

**cut [1]** 48/9

**D**

**D/B/A [4]** 13/5 13/5 13/6 37/20

**D/B/As [1]** 12/11

**Daddy [8]** 22/19 22/23 23/1 34/2 34/3 34/5 34/7 34/9

**damage [6]** 9/10 9/15 24/20 25/5 26/12 58/8

**damages [34]** 3/14 3/20 4/10 5/17 7/24 10/12 10/14 10/15 14/17 16/16 16/23 17/19 17/21 24/20 25/1 25/11 26/20 28/18 28/21 35/18 38/7 41/3 43/19 44/22 44/24 47/22 49/15 52/4 52/7 53/6 53/18 53/22 54/24

**damages-related [1]** 7/24

**deadend [1]** 21/1

**dealt [1]** 21/14

**debate [1]** 30/11

**debit [2]** 13/25 14/5

**debt [1]** 32/24

**December [8]** 5/7 5/7 7/19 11/19 21/20 28/3 40/12 49/21

**December 10th [1]** 5/7

**December 2012 [2]** 7/19 11/19

**decide [1]** 41/18

**decided [2]** 20/5 35/9

**decides [1]** 29/9

**decision [2]** 41/11 52/17

**declaration [1]** 57/22

**declarations [1]** 6/17

**deducted [2]** 9/15 9/21

**deduction [1]** 11/1

**deductions [2]** 54/12 56/15

**default [1]** 39/19

**defendant [46]** 3/21 6/17 8/14 8/15 8/17 10/1 10/8 10/11 10/15 11/7 11/11 12/11 12/15 13/4 13/18 15/14 16/10 25/9 25/20 25/23 26/7 26/8 26/21 27/21 28/9 30/4 36/9 38/21 38/24 39/7 41/5 47/20 51/15 52/1 53/11 53/15 54/6 54/11 55/2 55/12 56/14 57/12 57/13 58/3 58/14 59/5

**defendant's [29]** 5/21 7/4 7/6 7/9 7/12 8/24 9/6 9/10 9/17 10/7 10/8 10/20 11/5 14/16 14/19 14/21 27/22 52/8 53/18 53/21 54/8 54/10 54/14 55/7 55/10 55/22 56/3 56/6 56/11

**defendants [3]** 1/7 1/18 47/2

**defense [1]** 50/25

**defiance [1]** 58/19

**Delaware [1]** 2/4

**delay [2]** 52/14 58/8

**deleting [1]** 23/9

**deliberate [1]** 29/3

**deliberately [2]** 49/10 59/9

**demanded [2]** 40/4 40/5

**denied [1]** 21/24

**deny [1]** 52/12

**deposit [4]** 13/25 14/2 14/2 36/19

**deposits [10]** 7/4 7/6 7/8 8/19 8/23 11/17 14/11 15/23 56/5 56/6

**derive [1]** 55/24

**derived [1]** 56/6

**deserved [1]** 58/6

**desire [1]** 59/6

**detailed [1]** 3/12

**details [2]** 19/15 19/15

**detective [1]** 53/9

**determination [2]** 53/5 54/7

**determinations [1]** 52/21

**developed [1]** 55/23

**diagnostic [1]** 5/3

**Diego [1]** 1/17

**difference [1]** 15/25

**difficulty [3]** 58/15 58/20 60/10

**diminish [1]** 57/6

**direct [4]** 17/4 23/15 47/14 58/21

**director [2]** 44/17 45/4

**directors [3]** 12/2 45/4 50/14

**disagree [1]** 45/25

**discoverable [1]** 40/23

**discovered [5]** 4/5 4/6 5/23 6/4 20/2

**discovery [20]** 3/19 3/20 4/4 7/25 16/11 16/12 16/23 17/2 17/12 18/19 24/7 37/12 40/18 40/21 40/25 41/13 54/2 54/4 55/2 59/8

**discretion [1]** 42/1

**discussion [2]** 11/21 44/4

**dishonest [1]** 16/19

**dispute [1]** 54/16

**dissolution [8]** 50/14 50/15 50/18 50/24 51/2 53/13 58/23 60/7

**dissolved [3]** 50/9 50/10 50/20

**distribution [3]** 29/5 29/7 29/8

**distributions [1]** 7/13

**district [12]** 1/1 1/1 1/10 1/22 9/23 9/24 14/24 45/22 47/12 57/25 61/4 61/4

**DIVISION [1]** 1/2

**DNA [1]** 5/3

**doctor for [1]** 32/18

**document [7]** 7/16 8/13 12/9 15/21 46/14 46/15 48/15

**documentary [1]** 55/9

**documentation [3]** 15/10 15/16 15/17

**documented [4]** 53/24 55/14 57/4 58/6

**documents [29]** 4/11 4/12 5/25 5/25 6/2 6/14 6/20 6/20 7/3 8/5 8/6 10/23 12/6 16/16 17/18 20/11 20/21 22/14 22/16 27/20 32/4 32/6 32/7 32/24 34/5 40/2 48/18 48/20 54/25

**D**

**Dolina [1]** 7/12
**dollar [1]** 14/4
**dollars [5]** 11/4 14/10 15/22
 15/24 38/1
**domain [2]** 21/15 21/18
**domains [1]** 22/9
**dormant [1]** 35/2
**doubt [1]** 29/12
**doubts [1]** 10/13
**dovetails [1]** 43/13
**Dr [47]** 2/14 4/1 4/23 7/13 18/11
 18/20 19/9 20/17 20/24 21/14
 22/5 22/6 22/8 23/3 23/22 23/25
 25/24 26/22 27/1 28/8 29/21
 30/21 31/1 32/7 32/15 32/17
 32/22 33/1 33/19 34/4 34/6
 34/18 35/7 39/8 40/7 41/5 41/16
 41/18 42/13 44/12 45/14 46/12
 47/16 48/16 48/21 50/2 50/10
**Dr. [52]** 4/14 5/1 5/9 5/19 6/3
 6/13 7/12 7/20 8/10 8/16 9/1
 9/19 10/21 11/6 11/13 11/23
 12/1 13/13 14/19 15/17 16/16
 17/5 18/1 18/7 18/10 19/12
 20/15 21/18 23/5 36/23 37/13
 39/23 39/24 40/6 40/14 40/22
 41/9 41/14 45/3 45/9 48/23 52/2
 53/11 54/1 58/7 58/14 58/17
 59/2 59/7 59/13 59/22 60/6
**Dr. and [2]** 45/3 48/23
**Dr. Krishna's [1]** 40/6
**Dr. Krishnamurthy [43]** 4/14
 5/1 5/9 5/19 6/3 6/13 7/20 8/10
 8/16 10/21 11/6 11/13 11/23
 12/1 13/13 15/17 16/16 17/5
 18/1 18/7 18/10 19/12 20/15
 21/18 23/5 36/23 37/13 39/23
 39/24 40/14 40/22 41/9 41/14
 45/9 52/2 53/11 58/7 58/14
 58/17 59/7 59/13 59/22 60/6
**Dr. Krishnamurthy's [5]** 7/12
 9/19 14/19 54/1 59/2
**Dr. or [1]** 9/1
**dutifully [1]** 42/15

**E**

**earliest [1]** 33/15
**early [1]** 31/2
**earned [2]** 31/3 31/4
**earnest [1]** 4/4
**easier [1]** 28/15
**ECF [1]** 19/5
**economic [1]** 30/19

**effect [1]** 5/14
**efforts [2]** 16/5 27/1
**efforts [5]** 3/19 16/11 18/19
 52/3 59/21
**EI [1]** 1/16
**elements [1]** 35/18
**email [19]** 17/16 17/22 17/23
 18/1 18/15 18/20 19/11 19/23
 20/25 21/5 21/8 34/25 35/6
 35/10 35/14 40/4 40/22 40/22
 49/20
**emails [28]** 17/19 17/20 17/24
 19/8 19/10 19/18 20/7 23/4 23/6
 23/6 23/9 34/7 34/9 34/12 34/17
 34/18 34/19 34/23 34/24 35/2
 35/8 35/12 35/16 39/4 40/5
 48/20 48/22 49/2
**embody [2]** 52/19 60/13
**embrace [1]** 57/8
**employee [1]** 36/24
**employer [3]** 18/3 18/16 48/21
**encountered [1]** 3/18
**enhanced [1]** 57/15
**enhancement [4]** 24/21 24/25
 26/11 26/12
**enhancements [1]** 8/3
**enormous [1]** 23/14
**enter [1]** 60/18
**entirely [3]** 14/20 15/2 38/7
**entirety [1]** 38/11
**entities [17]** 11/22 11/22 11/25
 12/3 12/4 12/13 12/14 14/8
 17/17 27/21 37/3 37/18 37/25
 39/6 44/18 45/15 45/21
**entitled [2]** 53/18 54/14
**entity [6]** 8/15 37/14 37/16
 53/14 59/23 59/24
**entry [2]** 22/12 22/19
**enumerated [1]** 55/21
**Epix [1]** 14/23
**equal [2]** 9/17 54/14
**equate [1]** 32/15
**Equifax [1]** 57/2
**equipment [12]** 7/18 7/21 8/20
 29/23 29/24 30/7 37/1 46/1 46/3
 46/9 46/10 46/17
**ERIC [3]** 1/16 2/11 2/17
**ESQUIRE [3]** 1/13 1/16 1/19
**essential [1]** 54/6
**essentially [6]** 31/22 32/9 32/10
 38/2 38/10 40/21
**establish [5]** 52/3 52/4 54/9
 54/23 59/21
**estimate [5]** 10/6 10/20 54/10
 55/6 55/20

**et [3]** 1/6 2/6 61/9
**eventual [1]** 52/15
**evidence [15]** 5/8 5/23 9/14
 10/6 16/4 24/17 31/16 38/22
 38/23 39/3 45/14 49/8 55/5 55/9
 55/22
**evidentiary [2]** 17/8 17/12
**examples [1]** 29/16
**exception [1]** 57/20
**excess [1]** 55/11
**exclusively [1]** 12/1
**exculpates [1]** 49/6
**excuses [1]** 36/7
**exist [1]** 35/2
**existence [4]** 4/6 4/7 4/7 39/17
**expanded [1]** 40/11
**expenditure [2]** 29/22 30/6
**expense [1]** 30/5
**expenses [1]** 57/5
**explanation [4]** 13/10 13/13
 14/15 46/3
**expressed [1]** 7/17
**extend [3]** 41/3 48/1 59/12
**extended [1]** 60/2
**extends [1]** 18/24
**extension [2]** 4/25 52/15
**extensions [2]** 17/2 17/13
**extensive [2]** 53/9 54/25
**extent [5]** 3/13 26/17 37/6
 46/22 52/13
**extraordinary [2]** 51/25 53/7
**extremely [1]** 23/21

**F**

**F.Sup [1]** 10/18
**fact [10]** 12/18 20/7 21/25 24/4
 32/2 37/19 46/15 47/1 47/24
 59/4
**factors [1]** 57/7
**facts [3]** 10/12 30/8 54/6
**fail [1]** 9/19
**failed [1]** 56/14
**fails [2]** 9/16 11/1
**failure [3]** 15/7 41/22 54/1
**faith [1]** 40/16
**fallacy [1]** 37/2
**fantasy [1]** 30/15
**Fargo [11]** 6/7 6/24 8/6 11/15
 12/6 12/7 12/8 12/19 12/19
 12/20 13/1
**Fashions [1]** 10/17
**FCRR [1]** 1/22
**federal [3]** 7/10 54/19 56/3
**fee [4]** 20/10 20/23 22/1 57/17
**fees [26]** 16/6 17/5 18/23 19/2

## F

fees... [22] 23/15 23/19 23/23 24/3 24/10 24/17 24/18 26/20 26/25 38/6 38/6 39/18 39/19 41/4 42/2 47/22 52/7 57/1 57/5 57/9 58/10 58/16
fifth [1] 17/10
figure [5] 3/21 8/19 9/9 9/11 10/25
file [2] 52/15 59/15
filings [5] 3/11 3/12 8/12 9/19 28/7
finally [6] 12/4 18/1 18/9 18/13 20/2 58/12
financing [1] 36/13
fingers [2] 27/11 43/9
finish [1] 51/18
flatly [1] 16/12
fly [2] 17/9 17/11
footprints [1] 59/19
force [1] 47/15
forced [1] 17/23
foreclosure [1] 32/23
foregoing [1] 61/11
foreign [5] 37/3 37/5 37/16 37/17 37/25
form [2] 48/22 53/2
former [1] 40/5
forms [4] 18/1 18/5 18/8 18/15
forthcoming [1] 39/25
Fourth [1] 57/2
frankly [6] 6/17 32/8 37/10 39/25 42/3 47/5
freezes [1] 22/24
Friddell [1] 1/12
friends [1] 49/3
frustrates [1] 10/11
funds [14] 8/4 8/5 8/18 8/21 11/3 13/6 13/14 14/14 14/20 15/2 15/8 16/2 32/24 46/7

## G

gaining [2] 22/22 22/25
generated [1] 14/13
Georgia [1] 25/2
Georgia-Pacific [1] 25/2
get-togethers [2] 48/24 49/22
Getty [1] 47/19
glad [1] 2/15
Gmail [6] 19/13 20/16 23/4 23/6 34/4 39/7
Gmails [1] 34/8
godaddy.com [3] 6/9 20/1 22/3
goods [3] 9/14 9/20 10/23

Google [17] 17/24 18/2 18/16 19/10 19/13 20/6 20/15 20/18 20/11 20/12 20/14 20/22 21/1 21/2 21/3 21/10
grand [1] 56/12
grant [1] 52/14
granted [5] 16/15 18/11 39/19 53/4 60/17
grants [1] 45/20
great [1] 30/13
greater [1] 53/22
Greenbelt [2] 1/5 1/23
Grenzer [3] 1/12 1/13 2/10
gross [5] 9/18 10/8 54/12 54/14 56/3
guarantees [1] 36/12

## H

happy [2] 20/17 28/10
header [1] 20/6
hearing [11] 1/9 2/7 3/16 7/20 11/20 17/12 25/8 27/25 28/4 47/6 61/7
hearings [3] 5/7 17/8 23/20
heavily [1] 53/24
helpful [2] 31/20 31/21
here's [2] 34/4 45/10
hereby [1] 61/5
hereto [1] 61/15
hide [1] 39/2
hiding [2] 31/6 35/13
highest [1] 10/16
history [2] 3/6 52/23
Hobbs [1] 1/12
hold [1] 41/18
Holdings [1] 14/7
home [1] 48/13
Honor [103]
Honor's [1] 39/19
HONORABLE [1] 1/9
hoping [1] 32/20
Hotmail [2] 18/3 18/16
house [1] 32/23
HSBC [9] 6/7 7/3 13/16 13/17 15/21 33/4 43/20 44/8 56/7
hundreds [2] 15/24 32/2

## I

I'd [2] 13/18 42/13
I'll [10] 2/24 22/2 28/15 34/2 45/24 51/16 51/17 55/16 55/17 60/18
I'm [34] 3/5 9/17 12/23 19/1 21/13 22/1 22/1 23/7 24/23 28/4 28/10 29/5 29/15 29/19 30/14

33/6 34/2 34/3 35/17 35/22 36/7 42/7 48/8 50/9 50/10 51/3 52/10 52/17 52/24 57/5 58/25 59/2 59/12 60/3
I've [13] 8/6 8/18 13/22 23/16 37/1 40/25 42/6 46/20 51/4 51/7 55/10 56/10 56/16
I.R.S [2] 31/5 36/6
identical [2] 25/18 25/23
ignorance [1] 29/3
ignored [3] 16/11 16/12 16/12
immediately [1] 11/9
impedes [1] 54/6
implicit [1] 15/7
importance [1] 12/3
impose [3] 58/11 58/12 59/16
imposed [1] 57/12
imposing [2] 58/15 60/10
improper [2] 38/2 40/10
inactive [1] 32/10
income [19] 6/24 6/25 7/2 29/2 29/9 29/17 30/3 30/3 30/8 30/12 31/6 31/9 31/10 33/2 36/10 36/13 42/16 55/25 56/1
incorporated [1] 52/21
incorporating [1] 60/14
incorrect [3] 30/19 37/2 42/19
incorrectly [1] 49/18
increased [1] 17/6
incredulous [2] 35/12 40/25
incurred [1] 57/15
incurring [1] 23/19
indemnify [2] 40/2 40/9
India [12] 11/23 11/25 12/14 14/7 21/23 27/2 37/6 37/8 37/9 37/14 38/4 48/17
Indian [2] 11/24 21/22
indications [1] 39/6
indirect [1] 10/7
indiscretions [1] 40/20
individual [6] 9/2 35/16 36/10 39/13 41/9 41/13
individually [1] 47/24
individuals [1] 43/2
inference [1] 33/23
inferences [2] 33/24 55/15
inferential [1] 54/8
inferred [1] 55/20
information [15] 3/23 3/23 3/24 3/24 10/5 20/6 22/14 31/20 31/22 35/14 38/15 38/16 55/14 57/3 59/11
infringement [4] 33/22 47/10 47/23 53/3
infringements [1] 37/7

## I

infringer [1] 25/5
infringer's [1] 9/13
infringing [6] 14/21 15/2 46/8
 46/12 47/15 59/19
initially [3] 4/1 11/23 28/16
injunction [1] 21/16
inkling [1] 30/5
inspected [1] 4/24
instances [1] 33/7
intellectual [1] 3/22
intends [2] 36/15 36/16
intentional [1] 53/20
intentionally [1] 25/5
interest [7] 8/3 46/22 46/23
 46/23 54/18 56/21 56/23
interested [1] 2/14
interests [1] 45/12
Internet [2] 6/9 20/1
Interstellar [1] 14/23
intimately [1] 5/4
intransigence [5] 38/14 52/1
 53/10 55/23 58/2
introduced [1] 5/8
invest [1] 32/20
investment [2] 30/20 30/21
investments [4] 29/20 30/23
 32/17 42/16
invoices [1] 38/24
involvement [4] 43/15 44/4
 46/19 49/4
irrelevant [1] 37/25
issue [4] 5/11 6/1 24/25 46/18
issued [1] 55/2
Item [1] 29/21
items [1] 46/12

## J

Jaeger [1] 34/1
JAEGERS [6] 1/16 2/11 2/18
 24/6 41/15 43/5
jobs [1] 33/9
joint [1] 26/21
jointly [4] 28/7 47/21 48/2
 58/13
Jr [2] 1/12 1/13
judge [7] 1/10 17/3 18/4 18/10
 21/6 40/12 54/3
judgment [12] 3/16 3/20 5/12
 17/10 28/1 28/4 39/20 47/6
 57/23 58/21 60/2 60/18
judicial [2] 33/23 57/25
juice [1] 30/6
jumbled [1] 20/11

## K

kinds [1] 7/23
kitchen [1] 31/23
kits [1] 5/3
knock [1] 30/9
knowing [3] 25/6 26/7 53/19
knows [1] 48/15
Krishna [2] 22/7 23/2
Krishna's [1] 40/6
Krishnamurthy [100]
Krishnamurthy's [14] 4/24 7/12
 9/2 9/19 14/19 21/14 41/16
 43/15 43/18 43/23 46/13 48/21
 54/1 59/2
Krishnamurthys [8] 6/23 16/10
 25/9 26/9 29/2 29/9 29/17 47/21

## L

lab [4] 5/1 29/23 30/7 37/1
labeled [2] 49/18 49/19
lack [4] 38/7 48/11 49/4 49/12
Lane [1] 1/23
Lanham [1] 53/2
lapses [1] 38/15
largely [1] 53/25
lasted [1] 16/25
lastly [1] 52/8
late [4] 21/10 27/14 27/18 47/7
law [9] 1/18 9/22 19/19 25/1
 48/4 50/18 50/20 51/3 54/15
lawsuit [5] 44/3 46/20 46/22
 47/25 48/12
leading [1] 57/2
leap [1] 48/4
learn [1] 27/6
legal [1] 57/15
lender [2] 4/15 4/15
length [1] 34/1
lengths [1] 30/13
liability [14] 41/3 41/8 41/24
 41/25 42/11 42/23 43/1 46/24
 48/1 48/6 49/7 58/13 59/21
 60/11
liable [6] 41/19 42/9 47/9 47/13
 47/21 48/3
liberty [1] 42/5
lied [1] 31/5
life [34] 1/3 1/6 2/3 2/5 2/10
 12/10 12/10 12/10 12/12 12/12
 12/12 13/4 13/5 13/5 13/6 13/23
 13/25 14/6 14/6 27/13 28/24
 30/20 36/9 37/8 37/15 37/20
 37/24 41/4 43/16 43/17 51/23

## (continued)

51/23 61/8 61/8
likes [1] 34/22
Limited [1] 14/7
lines [1] 25/12
Lisa [4] 1/22 61/3 61/19 61/20
list [3] 5/21 18/22 19/11
lists [3] 4/17 7/17 43/23
litigants [1] 29/13
litigating [2] 37/9 38/4
litigation [2] 5/11 40/24
LLC [2] 42/15 42/15
LLP [1] 1/15
loan [2] 55/25 56/2
loans [10] 15/13 15/18 16/1
 16/2 33/1 33/1 33/5 33/10 33/11
 36/12
local [1] 57/21
lodestar [1] 57/8
losses [1] 42/16
LOUIS [2] 1/13 2/9

## M

machine [2] 61/5 61/13
magically [1] 8/22
magistrate [4] 17/3 18/10 21/6
 54/3
mail [1] 27/4
maintaining [1] 21/21
manage [1] 44/10
Management [1] 44/24
managing [2] 45/3 45/4
manner [1] 42/19
manufacture [1] 5/21
March [13] 3/16 5/12 18/6
 21/16 22/10 22/14 24/5 25/7
 27/15 27/16 27/24 27/25 44/3
March 12th [2] 3/16 27/15
March 13 [1] 44/3
March 13th [1] 22/10
March 4th [1] 18/6
March of [1] 5/12
marital [1] 49/1
MARYLAND [18] 1/1 1/5 1/14
 1/20 1/23 2/6 5/22 9/23 12/15
 12/16 42/14 45/15 45/20 47/12
 47/12 50/18 50/19 61/5
MasterCard [1] 43/21
mastermind [2] 58/17 59/22
material [1] 16/16
materially [1] 40/11
materials [1] 38/21
mathematical [1] 55/18
matter [5] 2/2 2/6 30/11 51/11
 51/17

justify [1] 16/19

**M**

**mature** [1] 52/23
**meaningful** [1] 54/2
**mechanical** [1] 1/25
**Medical** [1] 32/19
**memo** [2] 18/25 19/1
**memorandum** [4] 22/2 45/1
49/25 54/25
**memory** [1] 38/15
**mess** [1] 20/12
**methods** [1] 54/8
**mic** [1] 3/1
**Micro** [1] 47/13
**Microsoft** [1] 47/12
**minimal** [1] 15/1
**minor** [1] 57/20
**misconduct** [1] 17/5
**mislead** [2] 29/4 29/14
**misleading** [1] 34/18
**mistake** [1] 29/12
**modest** [1] 57/11
**modifications** [1] 60/19
**molecular** [1] 5/2
**moment** [4] 11/3 27/10 35/24
49/13
**momentary** [1] 52/9
**Montgomery** [1] 2/5
**month** [2] 22/10 56/21
**monthly** [1] 43/22
**months** [3] 18/9 24/9 24/14
**motion** [47] 3/14 4/10 5/17 6/23
8/25 9/12 11/20 15/13 16/6 18/8
18/11 18/23 18/23 19/2 19/16
20/10 20/23 21/13 21/13 22/1
22/15 25/1 25/11 26/19 26/20
26/24 28/15 28/15 28/17 28/19
28/20 38/9 38/9 39/25 41/21
42/1 43/19 44/8 44/22 44/24
49/15 52/6 52/8 52/12 56/25
59/15 60/16
**motions** [9] 1/9 2/7 16/14 17/6
17/7 51/23 52/7 60/16 61/7
**Mouldon** [1] 29/6
**Mr** [9] 24/5 27/10 28/10 28/12
34/1 41/15 43/4 43/14 50/1
**Mr.** [4] 45/24 46/21 46/25 50/7
**Mr. Aitken** [4] 45/24 46/21
46/25 50/7
**Mrs** [10] 26/22 27/1 28/1 43/12
43/14 44/11 45/3 45/9 46/19
47/16
**Mrs.** [7] 7/14 9/2 27/13 42/6
43/18 43/23 48/23
**Mrs. Krishnamurthy** [4] 7/14

27/13 42/6 48/23
**Mrs. Krishnamurthy is** [1] 9/2
43/18 43/23
**Ms.** [1] 49/23
**Ms. Krishnamurthy** [1] 49/23
**multiple** [3] 16/13 29/11 52/1

**N**

**necessary** [1] 23/22
**needlessly** [1] 17/6
**negative** [3] 29/5 29/7 29/7
**neither** [4] 10/24 41/7 46/21
47/1
**net** [1] 14/11
**nicely** [1] 43/13
**noncompliance** [1] 55/1
**none** [5] 23/20 23/21 30/17
38/23 38/24
**nonexclusive** [1] 57/7
**nonparticipation** [1] 59/4
**nonsense** [1] 20/12
**notably** [1] 5/24
**notereading** [1] 1/25
**notice** [1] 42/20
**notwithstanding** [4] 19/22
22/18 24/15 55/22
**November** [2] 27/15 43/24
**November 16** [1] 43/24
**number** [23] 2/3 3/7 4/18 8/16
12/6 12/21 12/22 12/22 12/24
13/19 19/5 22/7 22/20 22/20
23/1 23/2 29/6 29/15 43/21
43/24 44/9 52/12 61/9
**numbers** [5] 5/20 21/3 21/3
52/7 52/8
**numerous** [1] 34/21

**O**

**oath** [3] 6/16 11/6 19/9
**objected** [1] 40/14
**objections** [4] 18/5 18/7 18/13
40/15
**obligation** [1] 14/19
**obstacle** [3] 16/22 16/22 16/22
**obstacles** [2] 3/18 3/19
**obstruct** [1] 58/8
**obstruction** [1] 59/20
**obstructive** [1] 40/17
**obtain** [3] 34/6 37/12 39/4
**obtaining** [1] 59/10
**obvious** [1] 53/15
**October** [1] 18/14
**office** [2] 33/16 33/17
**officer** [4] 26/23 44/12 47/13
52/2

**officers** [1] 47/9
**Office** [1] 69/873
**official** [4] 61/3 61/6 61/12
61/20
**officially** [2] 47/2 47/5
**oh** [2] 12/23 33/6
**older** [1] 25/22
**open** [3] 6/16 20/21 28/6
**operate** [1] 36/16
**operating** [3] 37/15 37/24 39/14
**operation** [2] 31/22 36/22
**opinion** [1] 39/12
**opportunity** [3] 16/9 27/6 41/9
**opposition** [1] 15/12
**option** [1] 23/18
**oral** [1] 60/15
**orally** [1] 52/18
**order** [17] 8/14 21/17 22/10
26/21 27/16 27/16 40/10 40/12
40/13 40/16 40/25 41/23 42/4
44/4 52/19 52/22 60/13
**orders** [4] 16/13 38/15 55/2
58/19
**ordinary** [4] 38/12 38/17 38/19
38/20
**Oregon** [1] 14/24
**original** [1] 40/11
**overall** [1] 52/21
**overcome** [1] 6/13
**overriding** [2] 9/25 9/25
**overruled** [2] 18/6 18/12
**owner** [1] 44/17
**owners** [2] 12/2 45/5

**P**

**p.m** [1] 1/7
**P.O** [1] 1/19
**Pacific** [1] 25/2
**page** [23] 4/16 10/18 12/8 18/23
18/24 18/24 19/3 19/4 19/6
19/10 22/6 22/11 22/19 25/12
29/17 29/20 35/1 43/19 44/6
44/7 49/16 49/24 49/25
**pages** [4] 15/14 22/2 22/4 61/11
**painful** [1] 52/23
**paper** [3] 45/7 45/9 48/14
**papers** [2] 23/24 55/4
**parallel** [1] 38/3
**part** [9] 18/18 18/19 21/13
29/17 41/17 44/15 45/14 46/24
53/4
**participate** [2] 47/14 47/17
**participated** [1] 60/8
**participation** [2] 48/11 49/12
**parties** [5] 40/3 47/25 54/16

## P

parties... [2] 55/4 57/10
partners [2] 21/22 45/4
partnership [1] 37/5
party [2] 2/14 59/17
pass [1] 28/10
password [2] 35/6 39/8
passwords [4] 20/16 20/19 20/25 21/7
path [1] 52/3
pay [2] 36/21 46/5
Payne [1] 29/6
Paypal [2] 6/8 19/25
peep [1] 27/3
penalties [1] 28/5
pending [1] 2/2
people [5] 30/15 36/15 38/16 39/4 39/5
percentage [2] 23/21 54/20
perfectly [1] 30/1
period [4] 17/2 36/24 56/4 56/19
persistence [1] 8/8
person [1] 59/8
personal [5] 11/11 32/16 36/12 41/8 41/16
Petroleum [1] 47/20
phase [2] 3/20 17/10
phone [3] 22/7 22/20 23/2
photographs [1] 5/18
pick [2] 27/9 31/16
pictures [1] 5/18
piece [3] 7/14 7/21 46/8
pinpoint [1] 10/18
place [1] 54/5
plaintiff [63]
plaintiff's [18] 3/22 9/15 9/16 11/24 15/6 16/11 17/5 25/10 26/3 28/17 28/20 34/12 42/20 52/3 52/19 52/22 53/22 55/6
plaintiffs [3] 10/4 10/5 26/2
plasmids [1] 4/22
pleadings [2] 19/16 50/21
plus [2] 54/20 56/23
podium [1] 2/20
point [15] 3/15 12/6 14/9 17/25 19/22 20/4 20/14 24/16 27/23 31/7 32/10 42/13 44/1 46/2 47/7
points [1] 54/20
Polo [1] 10/17
poof [1] 46/10
position [15] 10/1 10/2 10/9 10/22 13/12 19/19 41/6 44/14 44/15 45/7 46/6 46/8 46/11 47/8

48/2
post [1] 3/20 17/10
post-judgment [2] 3/20 17/10
potential [2] 4/15 35/10
potentially [2] 59/17 60/1
practicing [1] 57/25
prefer [1] 2/19
prejudgment [4] 8/3 54/18 56/21 56/23
prejudice [1] 59/14
presided [1] 54/3
president [2] 41/21 53/15
presumption [4] 14/20 15/1 15/5 33/15
presumptively [1] 57/20
pretend [1] 59/23
primarily [1] 35/6
primary [1] 3/19
principal [5] 26/2 26/4 52/2 53/11 53/14
principally [1] 58/7
principle [2] 9/25 30/19
principles [2] 54/15 55/21
procedure [1] 42/22
proceed [3] 28/13 33/12 35/18
proceeded [1] 57/12
proceeding [1] 28/25
proceedings [5] 1/25 60/20 61/6 61/12 61/14
proceeds [1] 9/3
process [2] 6/15 60/4
processes [1] 54/2
produce [6] 8/10 16/15 34/24 38/21 38/22 38/23
producing [2] 17/18 38/15
product [2] 3/23 5/20
products [6] 4/2 4/7 4/15 5/20 33/18 46/8
profits [20] 3/21 8/2 9/11 9/17 9/17 10/10 13/8 13/12 14/13 24/17 29/1 46/11 53/18 53/21 54/7 54/8 54/14 55/5 55/15 55/15
prohibited [1] 21/16
proof [2] 10/7 10/11
property [1] 3/22
proportional [1] 24/18
proposed [1] 60/13
prosecution [1] 50/25
protective [1] 40/16
prove [4] 17/21 35/19 54/11 56/15
proves [2] 35/20 46/14
providers [2] 17/23 40/10
proximate [1] 17/4

public [1] 33/16
purchase [4] 8/13 8/20 46/3 46/17
purchased [4] 8/21 29/22 29/25 46/8
purport [1] 51/5
purposeful [3] 29/3 41/10 49/5
purposefully [1] 41/13
purposely [1] 29/14
pursue [1] 42/18
pursuit [3] 16/23 57/16 58/8
putative [1] 15/18
puts [1] 36/1

## Q

question [2] 26/8 34/20
questioned [1] 7/20
questions [2] 16/4 28/10
quickly [1] 52/16
quote [1] 10/17
quotes [1] 10/3

## R

Rabon [1] 10/17
Rabonne [1] 10/18
rate [3] 54/20 56/21 57/19
rates [2] 57/19 57/23
ratify [2] 47/14 47/17
rational [1] 13/9
reach [1] 42/8
reasoned [1] 9/9
rebut [2] 14/20 15/6
rebuttable [1] 15/1
rebutted [1] 15/4
receipt [1] 8/13
receipts [1] 56/3
recent [1] 25/2
recess [2] 51/14 51/21
recognize [1] 57/6
recognized [1] 56/16
recognizes [1] 10/1
record [6] 2/8 9/12 10/13 33/16 49/8 59/4
recorded [1] 1/25
records [2] 6/4 7/6
recover [1] 53/18
recovery [1] 57/16
reduced [2] 56/10 57/19
reference [1] 9/1
referenced [2] 43/15 44/20
referencing [1] 22/19
reflected [2] 36/8 56/11
reflecting [1] 36/21
reflection [3] 36/18 36/19 37/23
reflects [4] 29/8 30/1 30/2 30/3

## R

**refused [5]** 16/15 17/15 18/5
18/8 19/17
**register [2]** 26/2 26/4
**registered [3]** 26/2 26/3 45/15
**registrar [2]** 6/9 22/22
**registrars [1]** 20/1
**registry [2]** 22/23 22/25
**relation [1]** 53/7
**relationship [1]** 40/3
**relatively [2]** 53/5 57/11
**relied [1]** 8/10
**Relief [1]** 53/3
**reluctant [1]** 60/3
**rely [1]** 31/17
**reply [1]** 15/15
**Reporter [4]** 1/22 61/1 61/3
61/20
**representation [4]** 5/15 7/1
33/17 33/21
**representations [5]** 4/14 5/9
6/23 6/25 11/14
**representative [1]** 4/23
**request [9]** 26/16 26/16 26/19
28/6 33/25 40/16 52/18 57/17
58/12
**requested [4]** 24/21 28/7 58/9
60/18
**requests [1]** 59/9
**required [8]** 16/25 17/1 26/5
53/8 53/20 54/9 55/3 59/8
**requisite [1]** 59/10
**research [1]** 5/2
**residence [6]** 32/3 39/14 40/4
40/5 40/6 40/8
**resolved [1]** 10/14
**response [1]** 47/3
**rest [1]** 42/23
**restriction [1]** 40/20
**result [3]** 17/4 23/15 46/11
**retained [1]** 51/4
**retrieve [1]** 35/7
**return [8]** 7/11 28/24 29/1 29/4
35/25 46/10 56/4 56/11
**returns [10]** 30/23 31/1 31/11
31/15 31/17 32/22 39/13 39/16
42/15 45/25
**revealed [1]** 21/7
**revealing [1]** 17/20
**revenue [5]** 3/24 30/16 30/18
30/19 41/3
**revenues [2]** 4/3 6/18
**revived [1]** 50/15
**richly [3]** 55/13 57/4 58/5

**rights [3]** 37/8 38/25 39/12
**RMR [1]** 61/2
**road [4]** 6/12 23/15 23/17 24/9
**roadblocks [1]** 21/11
**Robinson [1]** 57/2
**ROGER [1]** 1/9
**role [1]** 41/20
**route [1]** 6/15
**Royal [1]** 57/22
**rules [3]** 16/12 42/14 57/21
**rulings [1]** 60/14
**RWT [3]** 1/3 2/3 61/10
**RWT-10-3527 [3]** 1/3 2/3 61/10

## S

**salary [1]** 33/8
**sale [3]** 33/14 35/21 36/20
**sales [55]** 3/23 4/3 4/7 6/18
8/13 8/13 9/3 9/18 10/2 10/5
10/7 10/8 10/9 10/21 10/23
13/12 14/13 14/21 15/8 17/18
24/17 29/19 30/3 30/5 30/16
30/18 31/4 31/6 32/2 32/4 32/5
32/6 32/14 32/15 33/23 35/20
36/8 36/14 36/15 36/18 36/20
36/21 37/6 37/17 38/22 39/3
39/6 46/7 46/12 54/10 54/12
54/15 55/7 55/10 55/24
**sameness [2]** 25/8 25/13
**Samples [1]** 4/22
**San [1]** 1/17
**sand [1]** 49/5
**Sanders [3]** 1/15 2/18 57/18
**savings [1]** 12/9
**SCA [1]** 19/20
**scheduled [1]** 51/11
**School [1]** 32/19
**scope [3]** 40/18 40/24 42/4
**screen [2]** 22/24 37/16
**scuffles [1]** 54/4
**seal [1]** 19/6
**search [1]** 18/19
**second [4]** 18/8 18/11 29/19
47/19
**secretary [1]** 44/14
**section [4]** 25/3 26/13 54/17
54/19
**seek [5]** 13/7 14/16 34/4 36/13
38/22
**seeking [10]** 8/2 9/18 17/21
24/20 33/1 33/1 33/10 33/10
34/9 41/3
**seeks [1]** 14/15
**sense [2]** 35/11 42/18
**September [1]** 18/14

**series [3]** 5/18 49/20 51/22
**seriously [1]** 49/12
**served [4]** 27/4 48/13 48/14
48/22
**service [4]** 17/23 29/25 40/10
57/3
**Services [2]** 14/23 32/18
**shades [1]** 33/5
**share [1]** 45/11
**shareholder [1]** 44/17
**shareholders [1]** 12/2
**shares [1]** 45/11
**shifts [1]** 54/11
**short [1]** 54/19
**shorthand [2]** 61/6 61/13
**shown [4]** 32/13 33/14 37/17
46/20
**shut [3]** 42/16 42/19 42/23
**sign [4]** 18/4 18/7 35/1 40/2
**signatory [3]** 27/7 44/16 44/17
**signature [1]** 45/11
**signed [3]** 18/1 27/20 27/20
**significance [2]** 31/12 47/1
**signs [1]** 18/14
**simple [5]** 24/2 24/3 24/11
24/12 53/5
**single [10]** 16/21 17/16 17/22
27/4 33/14 35/9 38/9 39/13
40/22 48/15
**sixth [1]** 17/9
**slew [1]** 11/12
**slightly [1]** 3/17
**sloppy [1]** 10/12
**small [1]** 23/21
**smorgasbord [1]** 31/20
**snippet [1]** 43/21
**sole [2]** 12/2 23/15
**soon [1]** 51/16
**sophisticated [1]** 29/13
**sorts [1]** 35/13
**sought [3]** 3/23 3/24 41/13
**source [1]** 14/13
**sources [3]** 8/4 8/5 55/14
**SOUTHERN [1]** 1/2
**spanned [1]** 3/6
**spare [1]** 3/11
**specific [1]** 27/9
**spend [1]** 23/19
**spent [6]** 8/20 38/1 38/8 38/11
39/18 57/24
**spilling [1]** 19/10
**spills [1]** 44/6
**spoken [1]** 51/8
**spouse [1]** 41/6
**stand [1]** 2/19

## S

standpoint [1] 38/17
Starship [1] 14/23
starting [1] 43/19
starts [1] 44/5
State [4] 12/14 12/16 45/15 45/20
statement [8] 12/10 13/4 13/17 13/24 36/2 36/3 43/22 46/16
statements [4] 4/5 15/16 15/20 16/18
STATES [12] 1/1 1/10 1/22 17/18 37/18 37/22 44/18 45/6 45/18 45/22 48/24 61/4
status [3] 17/3 17/13 49/1
statute [1] 26/5
stenography [1] 1/25
step [5] 5/24 16/21 20/23 30/17 38/13
stick [2] 39/22 49/5
stick-your-head-in-the-sand [1] 49/5
stone [1] 39/21
Storage [1] 19/20
story [1] 34/22
straightforward [1] 57/11
street [1] 46/4
stretch [1] 48/4
strong [2] 2/21 2/22
strongly [1] 45/25
submitted [5] 5/13 5/19 18/2 48/18 52/20
subpoena [7] 6/5 6/8 6/9 6/19 7/11 35/9 48/21
subpoenaed [5] 6/3 11/9 19/24 19/25 20/3
subpoenaing [1] 6/6
subpoenas [8] 6/1 6/10 6/10 12/5 17/1 17/12 19/12 23/20
subscribed [1] 61/15
Subsection [1] 26/17
substantial [3] 55/15 58/5 59/16
substantially [2] 57/14 58/2
subtractions [1] 14/3
succeed [2] 32/21 32/21
successful [3] 31/8 32/11 33/3
successfully [1] 15/4
sue [2] 25/19 50/24
sued [1] 50/24
suggesting [1] 36/14
Suite [2] 1/14 1/17
sum [1] 8/1
summary [4] 3/16 5/12 31/3

47/6
sun [1] 35/20
suppliers [3] 3/25 4/8 4/16
support [2] 17/19 19/2
supported [2] 9/12 19/19
supporting [1] 8/5
surely [1] 48/15
surgery [1] 16/24
surrogate [1] 33/9
switch [1] 22/11

## T

table [1] 31/23
tape [1] 61/14
task [2] 53/6 53/7
tax [18] 7/10 7/16 28/24 29/1 30/23 31/1 31/11 31/15 31/17 31/22 35/25 39/13 39/16 42/15 45/25 46/9 56/4 56/11
Tech [3] 12/10 12/12 13/5
Technically [2] 33/18 50/8
TECHNOLOGIES [21] 1/3 1/6 2/4 2/5 2/10 13/4 13/23 14/6 27/14 28/24 37/8 37/15 37/24 41/4 43/17 43/17 44/19 51/23 51/24 61/8 61/9
Technology [1] 36/9
tempered [1] 39/17
tens [6] 11/4 11/16 14/10 15/22 15/23 38/1
term [2] 31/25 54/20
termed [1] 11/21
terminated [1] 45/19
terms [6] 3/10 19/18 31/12 38/14 49/9 51/25
testimony [2] 16/20 61/7
Texas [1] 30/17
Thank [6] 2/17 28/14 43/6 51/19 51/20 60/19
thankfully [1] 3/9
theme [1] 23/13
Therapeutics [5] 12/10 12/13 13/5 14/1 37/20
thinking [2] 24/12 24/13
thought [4] 39/20 40/10 40/19 42/22
thousand [1] 14/4
thousand-dollar [1] 14/4
thousands [8] 11/4 11/16 14/10 15/22 15/24 15/24 32/2 38/1
throw [1] 31/15
thrown [1] 32/8
thwart [2] 59/9 60/9
thwarted [1] 16/10
time [16] 23/17 23/18 23/18

23/19 24/6 31/24 36/24 36/24 56/19 57/23 60/8
timeframe [1] 49/2
times [5] 29/11 32/4 32/6 34/22 53/21
TITUS [1] 1/9
togethers [2] 48/24 49/22
total [9] 6/10 8/1 14/11 55/23 56/5 56/12 56/19 56/22 56/22
totally [2] 37/14 37/25
toward [2] 22/19 49/16
Towson [1] 1/14
tracked [1] 30/23
trademark [11] 5/10 25/18 33/16 33/17 37/7 37/8 38/10 47/10 47/23 53/2 53/17
trademarks [2] 3/22 5/16
transactions [1] 32/15
transcript [4] 1/9 1/25 25/12 61/12
transfer [2] 22/9 22/21
transferring [3] 21/21 22/23 45/11
treble [4] 25/4 25/5 26/12 56/23
trebles [1] 56/18
trebling [2] 26/16 56/16
trigger [1] 15/1
trip [1] 17/9
troubled [1] 58/25
Troutman [3] 1/15 2/18 57/18
trust [1] 35/8
trustee [2] 41/12 50/11
trustees [3] 50/15 50/17 51/1
truth [1] 33/6
truthfulness [1] 31/12
two-step [1] 30/17

## U

ultimate [3] 55/17 57/23 58/21
ultimately [3] 6/6 18/2 20/22
unable [1] 38/21
uncooperative [1] 34/15
underlying [2] 5/11 47/22
understanding [1] 50/19
unearthed [1] 11/25
unequivocal [1] 31/4
UNITED [12] 1/1 1/10 1/22 17/17 37/18 37/22 44/18 45/6 45/18 45/22 48/24 61/4
universe [2] 18/20 19/9
unreasonable [1] 38/7
unrelated [1] 37/14
unsuccessful [2] 34/10 34/11
untimeliness [1] 52/9

**U**

**untimely [1]** 52/13
**untrue [3]** 4/5 6/19 6/21
**untruthfully [1]** 16/17
**unturned [1]** 39/21
**unusual [2]** 39/15 58/1
**upward [1]** 26/15
**us [19]** 3/15 8/17 10/23 11/7
 11/13 17/22 17/23 17/25 17/25
 19/9 19/18 20/3 20/5 20/13
 20/15 20/16 25/24 34/8 56/12
**USA [1]** 37/24
**USPTO [3]** 5/10 5/15 5/19
**USUHS [1]** 49/19
**utterly [2]** 11/1 56/14

**V**

**Valor [1]** 14/7
**value [2]** 10/16 46/6
**vanishes [1]** 46/10
**variably [1]** 15/12
**vast [1]** 39/1
**vendor [2]** 32/6 38/23
**vendors [1]** 36/22
**venture [1]** 32/20
**verified [1]** 5/15
**versus [8]** 2/4 10/17 14/23
 47/12 47/20 51/23 57/2 61/8
**violated [1]** 53/17
**violation [1]** 53/19
**violations [1]** 53/2
**virtually [2]** 15/5 25/23
**visit [1]** 48/23
**visiting [1]** 49/4

**W**

**walk [1]** 29/15
**Washington [1]** 1/13
**web [2]** 31/10 35/1
**Wells [11]** 6/7 6/24 8/5 11/15
 12/5 12/7 12/8 12/19 12/19
 12/20 13/1
**whatsoever [1]** 30/4
**Wheaton [1]** 1/20
**Whereas [1]** 54/5
**whereof [1]** 61/15
**whichever [1]** 53/22
**who's [1]** 59/8
**wide [1]** 41/1
**withdrawal [3]** 14/4 14/4 14/5
**withheld [2]** 28/1 28/4
**withholding [1]** 10/12
**worth [1]** 29/18

**Y**

**Yahoo [3]** 17/24 18/2 18/13